## ROMAN v. SOUTHLAND TRANSP. CO.

[131 N.C. App. 571 (1998)]

LUIS ROMAN, DECEASED EMPLOYEE, MAYRA E. ROMAN, ISID E. ROMAN, NOEMI E. ROMAN, OSCAR A. ROMAN, AND JESSICA C. ROMAN, PLAINTIFFS V. SOUTHLAND TRANSPORTATION COMPANY, EMPLOYER; RISCORP OF NORTH CAROLINA, CARRIER, DEFENDANTS

No. COA97-1343

(Filed 15 December 1998)

**Workers' Compensation— injuries arising from employment— acting to benefit of third party—truck driver shot while chasing thief**

The Industrial Commission erred in a workers' compensation action by awarding benefits to a decedent and his family where the deceased was a long distance truck driver whose company handbook encouraged drivers to foster good public relations in their contacts with the public; the deceased and another truck driver pursued a thief from a truck stop as the register operator screamed for help; and the deceased was fatally wounded when security guards fired at the automobile of the fleeing thief. Deceased's employer received no appreciable benefit from his act in that there is no evidence of any improvement in the public's perception of trucking in general or this company in particular as a result of his acts; the employer and the truckstop were not engaged in a gratuitous reciprocal exchange of assistance when the injury occurred; deceased could not reasonably have believed that helping the truckstop apprehend a criminal was incidental to his employment; and there is no evidence to support the conclusion that deceased's employment put him at increased risk for suffering injury while attempting to apprehend a criminal.

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant Southland Transportation Company from Opinion and Award filed 22 July 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 June 1998.

*Waggoner, Hamrick, Hasty, Monteith and Kratt, PLLC, by S. Dean Hamrick, for plaintiff appellees.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Mel J. Garofalo and Erica B. Lewis, for defendant-appellant Southland Transportation Company.*

GREENE, Judge.

Southland Transportation Company (Southland) appeals from the North Carolina Industrial Commission's (Commission) award of workers' compensation benefits to the decedent Luis Roman (Roman), Mayra E. Roman, Isid E. Roman, Noemi E. Roman, Oscar A. Roman, and Jessica C. Roman (collectively, Plaintiffs).

Roman began working as a long distance truck driver for Southland in January of 1994. Pursuant to his employment, he was given Southland's "Driver's Handbook and Safety Manual" (Handbook), which states, in pertinent part:

> Your job, as a driver, depends upon good public relations, as does the future of your company and the trucking industry. . . .
>
> . . . .
>
> Of all involved in the trucking industry, you are in the most strategic spot. You are where the public is. You must meet them on the streets and highways. You drive through their towns, by their homes and businesses. . . . Our job is to do things that will help them like us better. Surely, vehicle operation with an absolute minimum of contacts with the public through accidents is of the utmost importance.

A driver involved in an accident was instructed to "be unfailingly courteous to those involved in the accident, the police and other authorities at the scene, to witnesses and bystanders with whom he may come into contact"; and to "[b]e polite at the accident scene."

On 7 April 1994, Roman was en route to Rocky Mount, North Carolina to make a delivery for Southland. Roman stopped to refuel his truck at the Flying J Truckstop (Flying J) in Gary, Indiana. The Flying J was an "authorized" truck stop; however, Southland had "no specific arrangements with [the Flying J]." Southland drivers could purchase fuel from Flying J stations if they chose to do so. Just after midnight, while Roman was inside the Flying J, various witnesses observed Robert Bankston (Bankston) reach across the Flying J counter into an open cash register drawer, remove a handful of cash, and run to his automobile in the Flying J parking lot. The register operator screamed for help as Bankston took the money and ran outside. Roman and another truck driver ran after Bankston and began "pulling and yanking on the steering wheel" of Bankston's moving automobile as he accelerated. As a result, Bankston's vehicle began

**ROMAN v. SOUTHLAND TRANSP. CO.**

[131 N.C. App. 571 (1998)]

making erratic circles in the Flying J parking lot. Roman was fatally wounded when Flying J security guards fired at Bankston's automobile. Bankston was apprehended by the security guards and other individuals shortly thereafter.

Southland denied the workers' compensation claim filed by Roman's estate. The Commission reviewed the claim without taking live testimony; instead, the Commission based its decision on stipulations, admissions, document production, and answers to interrogatories. The Commission found that "Roman had been dispatched to pick up a load of furniture . . . in Chicago, Illinois, and was en route to . . . Rocky Mount, North Carolina" when his injury occurred. The Commission further found that Roman had stopped to refuel at the Flying J, an authorized truck stop in Gary, Indiana, and that Roman and another truck driver had assisted in apprehending a robber who had attempted to steal cash from the Flying J. Finally, the Commission found that Roman "was shot and killed by one of the security guards while he was positioned inside the window of the [robber's automobile]." Based on these and other findings, the Commission concluded:

1. . . . Roman sustained a compensable injury by accident arising out of and in the course of his employment with [Southland] when he was mistakenly shot and killed by a security employee of the [Flying J] while he was responding to [a Flying J] employee's request for assistance in pursuing a fugitive who had robbed the [Flying J]. . . .

2. Where the duties of his employment place an employee in a position increasing his risk of being in harm's way, the employee's injury or death . . . is compensable . . . .

3. Where an employee is injured while engaged in the performance of some duty incident to his employment while acting in the course of his employment for the benefit of his employer as well as for the benefit of any third party, the employee's resulting injury or death is compensable . . . .

4. Where a truck driver takes his employer's vehicle on a long distance assignment and in the course of his employment encounters an emergency situation to which he responds, for the benefit of his employer who had encouraged him to assist members of the public in need of assistance, . . . the employee's resulting injury/death is compensable . . . .

The Commission accordingly awarded workers' compensation benefits to Plaintiffs.

---

The dispositive issue is whether Roman's injuries arose out of his employment.

"Arising out of employment," in the context of our Workers' Compensation Act (Act), N.C.G.S. ch. 97 (1991 & Supp. 1997), refers to "the origin or cause of the accidental injury." *Roberts v. Burlington Industries*, 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988) (noting that whether an injury arises out of the employment is a mixed question of law and fact). An employee's injury which occurs while acting for the benefit of a third person arises out of the employment if: (1) the act appreciably benefits the employer, *Roberts*, 321 N.C. at 355, 364 S.E.2d at 421; (2) the accident occurs while the employee and a third party are exchanging "reciprocal courtesies and assistance" for the benefit of the employer, *Guest v. Iron & Metal Co.*, 241 N.C. 448, 453, 85 S.E.2d 596, 600 (1955); *see also Roberts*, 321 N.C. at 356, 364 S.E.2d at 422 (noting that "[t]he exchange of reciprocal assistance was the key to the holding in *Guest*"); (3) the employee has reasonable grounds to believe that the act is incidental to the employment, *Guest*, 241 N.C. at 452, 85 S.E.2d at 599; or (4) the employment places the employee at an increased risk of injury than that to which the general public is exposed outside of the employment, *Roberts*, 321 N.C. at 358, 364 S.E.2d at 422-23.[1]

*Appreciable Benefit Test*

Applying the appreciable benefit test, this Court has held that an accident which occurs while an employee is offering aid to a third party which "reasonably tends" to retain the employer's business and to promote consummation of specific new business arises out of the employment. *Lewis v. Insurance Co.*, 20 N.C. App. 247, 250-51, 201 S.E.2d 228, 230-31 (1973) (holding that injury arose out of employment where an insurance agent was injured when he stopped by the side of the road to assist one of the policyholders in his assigned territory whose vehicle had run out of gas). Where an employee's aid to a third party is "prompted purely by humanitarian concern, . . . [how-

---

1. We note that our Supreme Court has specifically refused to apply the "positional risk" test as another alternative ground for showing that an injury arose out of the employment under facts similar to this case. *Roberts*, 321 N.C. at 358, 364 S.E.2d at 423 (noting that under the positional risk test, an injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of employment placed the employee in the position to be injured).

ROMAN v. SOUTHLAND TRANSP. CO.

[131 N.C. App. 571 (1998)]

ever, there is] no conceivable *quid pro quo* of possible benefit to the employer" and the act does not arise out of the employment. *Roberts*, 321 N.C. at 356-57, 364 S.E.2d at 422 (holding that injury did not arise out of employment where an employee returning home from a business trip was injured when he stopped by the side of the road to help an unknown injured pedestrian).

In this case, Southland received no appreciable benefit from Roman's courageous act. There is no evidence in the record of any benefit Southland may have received as a result of Roman's attempt to apprehend a criminal. Although Southland's Handbook suggests that drivers can influence the public's perception of the truck driving industry by behaving in a "courteous" manner, there is absolutely no evidence in the record of any improvement in the public's perception of trucking in general or of Southland in particular as a result of Roman's acts. While the incident presumably was reported by the news media, this alone is not evidence of an appreciable benefit to Southland. *See Roberts*, 321 N.C. at 355-56, 364 S.E.2d at 421 (newspaper articles relating the events surrounding the incident are not evidence of an appreciable benefit to the employer through increased good will).

### Reciprocal Exchange of Assistance Test

The reciprocal exchange of assistance test is similar in nature to the appreciable benefits test, because it too entails a benefit to the employer. *See Guest*, 241 N.C. at 453, 85 S.E.2d at 600 (holding that injury arose out of employment where employee was sent by his employer to change a flat tire and, while receiving free air for the tire from a service station operator, helped push a stalled vehicle away from the station pumps at the operator's request and was struck by a moving vehicle). "[W]hen at the time and place of injury mutual aid is being exchanged between the employee [on behalf of the employer] and [a third party], . . . the aid received and the aid given are so closely interwoven that an injury to the employee under such circumstances must be held connected with and incidental to his employment." *Id.* In such cases, the employee has "reasonable grounds to apprehend that his refusal to render the assistance requested of him might well . . . result[] in like refusal by the [third party]" to render the gratuitous benefit to his employer. *Id.*

In this case, Southland and the Flying J were not engaged in a gratuitous reciprocal exchange of assistance when the injury occurred. Roman was not receiving any free benefit from the Flying J for which

he might feel obligated to render assistance to the Flying J on Southland's behalf. Any benefit to be received (*i.e.*, fuel) was not gratuitous; the Flying J would be adequately compensated with either cash or credit. The required compensation was not ambiguous, but was a predetermined amount. Roman could not reasonably have believed that his refusal to apprehend a criminal for the Flying J would result in the Flying J's refusal to supply fuel to Southland.

### Incidental to Employment Test

To arise out of the employment, "an injury must come from a risk which might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. . . . It must be incidental to the character of the master and servant." *Forsythe v. Inco*, 95 N.C. App. 742, 744, 384 S.E.2d 30, 31 (1989). "Incidental to," as used in this context, may be defined as "[s]omething contingent on or related to" actual employment duties. *See American Heritage College Dictionary* 686 (3d ed. 1993).

In this case, Roman could not reasonably have believed that helping the Flying J apprehend a criminal was incidental to his employment with Southland. Southland's Handbook required its drivers to improve the public's perception of the trucking industry through the avoidance of preventable vehicular accidents and through courteous behavior. The Handbook's emphasis is on the conduct of Southland's employees while they are driving their trucks on the highway with other motorists. In any event, it would be unreasonable for Southland's employees to interpret the requirement to be courteous to include the apprehension of criminals. Southland hired Roman to drive a truck in a safe and courteous manner. The apprehension of criminals is unrelated to courteous truck driving, and accordingly, was not incidental to Roman's employment.

### Increased Risk Test

Application of the increased risk test requires a showing that the employment placed the employee at a greater risk of injury than that to which the general public is exposed. *Minter v. Osborne Company*, 127 N.C. App. 134, 137, 487 S.E.2d 835, 837, *disc. review denied*, 347 N.C. 401, 494 S.E.2d 415 (1997); *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 248, 377 S.E.2d 777, 781 (noting that the injury must be one to which the employee would not have been equally exposed apart from the employment), *aff'd per curiam*, 325 N.C. 702, 386 S.E.2d 174 (1989). The injury arises out of the employ-

**ROMAN v. SOUTHLAND TRANSP. CO.**

[131 N.C. App. 571 (1998)]

ment "if a risk to which the employee was exposed because of the nature of the employment was a contributing proximate cause of the injury." *Roberts*, 321 N.C. at 358, 364 S.E.2d at 423. "If the risk is one to which all others in the neighborhood are subject, as distinguished from a hazard peculiar to the employee's work, injury resulting therefrom is not compensable." *Guest*, 241 N.C. at 453, 85 S.E.2d at 600-01.

In this case, the Commission concluded that Roman's employment with Southland put him at an increased risk for suffering injury while attempting to apprehend a criminal. There is, however, simply no evidence in the record to support this conclusion. *See Moore v. Davis Auto Service*, 118 N.C. App. 624, 627, 456 S.E.2d 847, 850 (1995) (noting that competent evidence must support the Commission's findings of fact, which, in turn, must support its conclusions of law). Roman was not required to stop at the Flying J, but chose to stop there because it was along his route. Roman was at no greater risk of danger from criminal activity due to the necessity of stopping to refuel than is the general public outside of his employment. "[Roman's] decision to render aid created the danger; the risk was not a hazard of the journey." *Roberts*, 321 N.C. at 359, 364 S.E.2d at 423.

The injuries Roman received while risking his own life to apprehend a criminal at the Flying J did not arise out of his employment with Southland. Accordingly, Roman cannot be compensated under the Act, because "[t]o grant compensation here would effectively remove the 'arising out of the employment' requirement from the Act." *Roberts*, 321 N.C. at 360, 364 S.E.2d at 424. Roman's courageous behavior is commendable, and any party who negligently or criminally contributed to his injuries should be held accountable; his employer, however, may not be held accountable under the Act.

Reversed.

Judge MARTIN, Mark D., concurs.

Judge TIMMONS-GOODSON dissents.

Judge TIMMONS-GOODSON dissenting.

I must respectfully dissent from the majority opinion's holding that the fatal injury plaintiff sustained was not compensable under the Workers' Compensation Act.

In the instant case, the Full Commission determined, based upon the holding in *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E.2d 596 (1955), that decedent's death "arose out of" his employment because his actions "benefited [sic] Southland Transportation Company by increasing the employer's goodwill as well as reciprocating assistance for that anticipated from the truck stop employees[.]" According to the majority, however, this conclusion amounted to a "patent legal error" not supported by the evidence in the record. Additionally, the majority finds the holding in *Guest* inapplicable because decedent's altruistic actions were in no way related to his employment, were of no benefit to Southland, and did not command the type of "reciprocal exchange of assistance" required by the court in *Guest.* I disagree.

In *Guest*, the subject accident occurred when the claimant-employee was sent by his employer to the Greensboro Airport to fix a pair of flat tires on his truck. After replacing the tires' inner tubes, he and a fellow employee located a filling station where they asked the operator for some "free air." The operator agreed, but before the employees could finish filling the tires, they were asked by the operator to help push a customer's stalled car. While helping the operator push the car onto the highway, an oncoming car struck the claimant-employee, severely injuring him. In upholding the Commission's award of compensation, our Supreme Court held that the employee's injuries were sustained in the course of his employment because his actions provided an appreciable benefit to his employer. *Id.* at 453, 85 S.E.2d at 600. According to the Court, the employee had reasonable grounds to believe that his refusal to render assistance to the operator may well have resulted in the operator's refusal to give him the "free air" his employer desired. *Id.*

In *Roberts v. Burlington Industries*, 321 N.C. 350, 364 S.E.2d 417 (1988), the decedent-employee was a furniture designer for defendant-employer, Burlington Industries. In this capacity, the employee was not required to have any contact with the general public, other than the occasional visits he would make to retail furniture stores. One evening, while returning home from a business trip, the employee stopped at the scene of an accident to help a pedestrian who had just been struck by an oncoming vehicle. While helping the pedestrian, the employee was himself struck by a vehicle, ultimately resulting in his death. Thereafter, the decedent-employee's family sought workers' compensation benefits from the employer, contending that decedent's "Good Samaritan" acts arose out of his employ-

ROMAN v. SOUTHLAND TRANSP. CO.

[131 N.C. App. 571 (1998)]

ment because they benefitted the employer as well as the pedestrian. Finding no merit in this contention, however, the Supreme Court upheld the Commission's denial of benefits, noting that "[t]he exchange of reciprocal assistance was the key to the holding in *Guest*," *id.* at 356, 364 S.E. 2d at 422, and that no such reciprocity occurred in that case as "[d]ecedent's benevolent acts were a pure 'courtesy of the road' and bore no relation to the employer's interest," *id.* at 357, 364 S.E.2d at 422. Accordingly, the Court held "that such purely altruistic actions, with no actual benefits to the employer, [did] not arise out of the [employee's] employment." *Id.* at 357, 364 S.E.2d at 422.

In my opinion, the facts before us today are not only more analogous to those of *Guest* than to those of *Roberts*, but I believe, as the Commission concluded, that in many ways, they present an even stronger case for awarding compensation benefits than did those in *Guest*. To begin, here, as in *Guest*, the decedent was engaged in an activity characteristic of his employment—i.e. that of driving a truck—when the subject accident occurred. In fact, when the robbery took place, decedent had been driving a Southland truck, was in the process of using a Southland credit card to make the necessary purchase and was stopped at a truck stop designated by Southland for the fueling of its trucks.

Moreover, unlike the employee in *Guest* or *Roberts*, the record here indicates that decedent was expressly encouraged, by way of Southland's driver handbook, to assist members of the public whom he might encounter while driving on the highway. Although Southland did not direct decedent to apprehend robbers as he drove the company's truck, it did solicit his help in maintaining a good relationship with those on the road so that ultimately the company could combat the negative perception the public had of truck drivers. Here, decedent was not only helping members of the public at large, he was also assisting individuals who had a special business relationship with his employer. The facts before us are unlike the situation in *Roberts* where the decedent's action was purely for the benefit of a third party and, thus rendered any finding of goodwill to the employer "purely speculative," *id.* at 355-56, 364 S.E.2d at 421. I conclude, therefore, that the assistance decedent attempted to give Flying J employees undoubtedly benefitted the existing special relationship between Southland and Flying J, and also increase the good will Southland expressly sought to promote between itself and the general public. As the Court noted in both *Guest* and *Roberts*, "[i]f the ultimate effect of

claimant's helping others is to advance his own employer's work, . . . it should not matter whether the immediate beneficiary of the helpful activity is a . . . complete stranger." *Id.* at 355, 364 S.E.2d at 421 (quoting *Guest,* 241 N.C. at 452, 85 S.E.2d at 600). Finally, and most significantly, this case is similar to *Guest* in that decedent had not yet received the immediate benefit desired by his employer when he responded to Flying J employees' screaming bequest to "stop" the fleeing robber. Not only did he not receive the receipt Southland required its truckers to obtain when purchasing gas, he was unable to accomplish the very task for which he had stopped—i.e. the refueling of his truck. Thus, although it is true that decedent was to pay for the assistance he was to eventually receive at Flying J, I simply cannot conclude, as did the Court in *Roberts,* that "[his] offer of aid was prompted purely by humanitarian concern [such that] . . . [t]here was no conceivable *quid pro quo* of possible benefit to the employer." *Id.* at 356-57, 364 S.E.2d at 422. Indeed, there is no "patent legal error" in finding an exchange of reciprocal assistance between decedent and Flying J employees where, as here, decedent was driving Southland's truck at the time of the accident, was authorized to stop at the Flying J to fuel his truck, was required to obtain a receipt in order to be reimbursed for the gasoline he ultimately purchased, and was encouraged by Southland to aid members of the public while in the performance of his duties as a truck driver.

Considering the similarities between this case and *Guest,* as well as the rule which constrains us to liberally construe our Workers' Compensation Act in favor of compensation, *Hoyle v. Isenhour Brick & Tile Co.,* 306 N.C. 248, 293 S.E.2d 196 (1982), I find no error in the Commission's decision to apply the holding in *Guest* to the facts of this case. Furthermore, I note that even if the Commission did err in its application of *Guest,* I believe it still had cause to find decedent's death compensable as it correctly pointed out in its Conclusions of Law that "[w]here the duties of his employment place an employee in a position increasing his risk of being in harm's way, the [e]mployee's injury or death resulting from injury while engaged in the performance of some duty incident to his employment . . . is compensable under the Workers' Compensation Act."

Here, the danger in which decedent was placed at Flying J was due, at least in part, to the fact that he was required by Southland to refuel his truck at designated truck stops which included the Flying J chain. Thus, decedent's decision to render aid in this case cannot be considered a risk wholly unrelated to his employment, but rather, a

risk incidental or peculiar to the performance of his duties as a truck driver for Southland. *Roberts*, 321 N.C. at 358, 364 S.E.2d at 423.

For the foregoing reasons, I dissent from the majority and conclude that the Commission properly determined that decedent's death was compensable.