LUIS ROMAN, DECEASED EMPLOYEE, MAYRA E. ROMAN, ISID E. ROMAN, NOEMI E. ROMAN, OSCAR A. ROMAN, AND JESSICA C. ROMAN v. SOUTHLAND TRANS-PORTATION COMPANY, EMPLOYER; RISCORP OF NORTH CAROLINA, CARRIER

No. 19A99

(Filed 25 June 1999)

**Workers' Compensation— compensable claim—truck driver injured while pursuing robber**

An evenly divided Supreme Court affirmed without precedential value the decision of the Court of Appeals in a workers' compensation action which reversed the Commission's award of benefits in an action arising from a truck driver being shot and killed by security guards firing at a robber's car while the truck driver was pursuing the robber after the robbery of a truck stop.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice ORR dissenting.

Justices FRYE and PARKER join in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 131 N.C. App. 571, 508 S.E.2d

ROMAN v. SOUTHLAND TRANSP. CO.

[350 N.C. 549 (1999)]

543 (1998), reversing the opinion and award entered by the Industrial Commission on 22 July 1997. Heard in the Supreme Court 12 April 1999.

*Waggoner, Hamrick, Hasty, Monteith and Kratt, P.L.L.C.*, by *S. Dean Hamrick and John W. Bowers*, for plaintiff-appellants.

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P.*, by *Mel J. Garofalo and Erica B. Lewis*, for defendant-appellees.

WAINWRIGHT, Justice.

In January 1994, decedent Luis Roman (Roman) began working as a long-distance truck driver for Southland Transportation Company (Southland). On 7 April 1994, Southland dispatched Roman to pick up a load of furniture in Chicago, Illinois, and to deliver it to Rocky Mount, North Carolina. En route to Rocky Mount, Roman stopped to refuel his truck shortly after midnight at the Flying J Truck Stop (Flying J) in Gary, Indiana. Inside the Flying J, Roman witnessed a robber reach across the counter into the open cash-register drawer, remove cash, and run outside to his car in the Flying J parking lot. After the cashier screamed for help, Roman and another truck driver ran after the robber and began "pulling and yanking on the steering wheel" of the robber's moving automobile as it accelerated, causing the automobile to make erratic circles in the parking lot. Flying J security guards fired at the robber's car and accidentally fatally wounded Roman while Roman was positioned inside the window of the robber's car. The security guards and other individuals apprehended the robber shortly thereafter.

Roman's estate filed a workers' compensation claim, which Southland denied. A deputy commissioner with the Industrial Commission reviewed the claim and concluded that Roman sustained a compensable injury by accident arising out of and in the course of his employment, and the full Commission adopted his conclusion. The Commission found that Southland's driver's handbook and safety manual had encouraged Roman to assist members of the public and that Roman's acts were beneficial to his employer based on both the good will and improved image Southland received. Further, the Commission found that Southland benefitted from a reciprocal exchange of assistance between Roman and the Flying J employees, similar to the fact situation in *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 85 S.E.2d 596 (1955). Therefore, the Commission held that

**ROMAN v. SOUTHLAND TRANSP. CO.**

[350 N.C. 549 (1999)]

[w]here a truck driver takes his employer's vehicle on a long distance assignment and in the course of his employment encounters an emergency situation to which he responds, for the benefit of his employer who had encouraged him to assist members of the public in need of assistance, . . . the employee's resulting injury/death is compensable . . . .

A divided panel of the North Carolina Court of Appeals reversed the Commission's decision based on the theory that granting compensation would remove the "arising out of the employment" requirement. *Roman v. Southland Transp. Co.*, 131 N.C. App. 571, 577, 508 S.E.2d 543, 547 (1998). Contrary to the Commission's decision, the Court of Appeals held that there was no evidence of "reciprocal courtesies," so the *Guest* decision could not be used to support an award for benefits. *Id.* at 575, 508 S.E.2d at 546. The Court of Appeals concluded that the facts of the instant case were more similar to those provided in *Roberts v. Burlington Indus.*, 321 N.C. 350, 364 S.E.2d 417 (1988). Furthermore, the Court of Appeals concluded that Roman's decision to render aid created the danger and that the risk was not a hazard of the trip. *Roman*, 131 N.C. App. at 577, 508 S.E.2d at 547 (citing *Roberts*, 321 N.C. at 359, 364 S.E.2d at 423). Therefore, the Court of Appeals held that although Roman's courageous behavior was commendable, his employer Southland could not be held liable. *Id.*

On appeal as of right to this Court by virtue of the dissent below, we must determine whether the Court of Appeals erred in reversing the Commission's decision that Roman's death arose out of his employment with Southland. Whether an employee's injury arose out of and in the course of his employment is a mixed question of law and fact. *Hoffman v. Ryder Truck Lines, Inc.*, 306 N.C. 502, 506, 293 S.E.2d 807, 809-10 (1982). If there is evidence to support the Commission's findings concerning this issue, we are bound by those findings. *Id.* The Commission's opinion and award can be reversed only if there is a patent legal error. *Id.* at 505, 293 S.E.2d at 809.

The North Carolina Workers' Compensation Act provides that an employee's death is compensable only when such death results from an injury "arising out of" and "in the course and scope of" his employment. N.C.G.S. § 97-2(6), (10) (Supp. 1998). "Arising out of the employment" and "in the course of the employment" are two separate requirements a claimant must establish to receive compensation. *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 251, 293 S.E.2d 196,

ROMAN v. SOUTHLAND TRANSP. CO.

[350 N.C. 549 (1999)]

198 (1982). "Arising out of the employment" refers to the origin or cause of the accidental injury, while "in the course of the employment" refers to the time, place, and circumstances of the accidental injury. *Bartlett v. Duke Univ.*, 284 N.C. 230, 233, 200 S.E.2d 193, 194-95 (1973). Although the Workers' Compensation Act is liberally construed so that benefits are not denied based on a technical, narrow, and strict interpretation, the rule of liberal construction cannot be used to attribute a foreign meaning to the plain and unmistakable import of the words employed. *Guest*, 241 N.C. at 452, 85 S.E.2d at 599.

In general, an employee's workers' compensation claim is compensable if he acts for the benefit of his employer to an appreciable extent. *Id.* at 452, 85 S.E.2d at 600. In contrast, a claim is not compensable if the employee acts solely for his own benefit or purpose, or if he acts solely for a third person. *Id.*

> "Acts of an employee for the benefit of third persons generally preclude the recovery of compensation for accidental injuries sustained during the performance of such acts, usually on the ground they are not incidental to any service which the employee is obligated to render under his contract of employment, and the injuries therefore cannot be said to arise out of and in the course of employment. . . . However, where competent proof exists that the employee understood, or had reasonable grounds to believe that the act resulting in injury was incidental to his employment, or such as would prove beneficial to his employer's interests or was encouraged by the employer in the performance of the act or similar acts for the purpose of creating a feeling of good will, or authorized so to do by common practice or custom, compensation may be recovered, since then a causal connection between the employment and the accident may be established."

*Id.* at 452, 85 S.E.2d at 599-600 (quoting William R. Schneider, 7 Schneider's Workmen's Compensation § 1675 (perm. ed. 1950)) (footnotes omitted) (alteration in original).

Furthermore, a claim is compensable if the employment was a contributing cause of the injury. *Roberts*, 321 N.C. at 355, 364 S.E.2d at 421. As this Court has previously explained, an injury arises out of one's employment "when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the per-

ROMAN v. SOUTHLAND TRANSP. CO.

[350 N.C. 549 (1999)]

formance of some service of the employment." *Perry v. American Bakeries Co.*, 262 N.C. 272, 274, 136 S.E.2d 643, 645 (1964), *quoted in Bartlett*, 284 N.C. at 233, 200 S.E.2d at 195. However, if the risk is one to which everyone may be subjected, instead of a hazard peculiar to the employee's work, the injury is not compensable. *Guest*, 241 N.C. at 453, 85 S.E.2d at 600-01.

Plaintiffs contend Roman was acting in the scope of his employment for the following reasons: He was driving a truck for Southland, he stopped at a gas station authorized by Southland, he was confronted by a robbery situation at the gas station while he was on the job, he was required to obtain a receipt from the Flying J for tax records, and Southland's handbook encouraged him to assist members of the general public. Plaintiffs point to the fact that Roman was not only helping members of the public at large, but he was specifically assisting individuals who had a special business relationship with Southland. Thus, plaintiffs conclude this case should be analyzed pursuant to *Guest*, 241 N.C. 448, 85 S.E.2d 596.

As previously noted by this Court, the facts of *Guest* are distinguishable from cases where the act of the employee is characterized as "chivalric" or "an errand of mercy" or "the act of a good Samaritan" because those acts are wholly unrelated to the employment. *Id.* at 455, 85 S.E.2d at 601. In *Guest*, the plaintiff-employee and another co-worker were sent by their employer to fix two flat tires. The plaintiff and the co-worker fixed the tires, and in the performance of this work, they went to a gas station to inflate the tires. The men received permission from the gas-station operator to get free air to inflate their tires. While the employees were putting air in the tires, the gas-station operator asked the employees to help push a stalled vehicle away from the gas-station pumps. While pushing the stalled vehicle, the plaintiff-employee was struck and killed by another moving vehicle. This Court concluded that the courtesies and assistance extended by the employee were in reciprocity for the courtesy of free air. *Id.* at 453, 85 S.E.2d at 600. Thus, this Court held that "when at the time and place of injury mutual aid is being exchanged between the employee [on behalf of the employer] and [a third party], . . . the aid received and the aid given are so closely interwoven that an injury to the employee under such circumstances must be held connected with and incidental to his employment." *Id.* In that type of case, this Court has held that the employee has reasonable grounds to feel that his refusal to give assistance might result in the third-party's refusal to give the gratuitous benefit to the employer. *Id.*

ROMAN v. SOUTHLAND TRANSP. CO.

[350 N.C. 549 (1999)]

In the instant case, Southland and the Flying J were not engaged in a gratuitous reciprocal exchange of assistance. Any benefit Roman would receive from the Flying J would not be gratuitous because Roman would have compensated the Flying J for the gas. Roman could not reasonably have believed that his refusal to stop the robber for the Flying J would result in the Flying J's reciprocal refusal to supply fuel or a fuel receipt to Southland.

In *Guest* and *Roberts*, the plaintiff-employees were traveling because of their employment when they were killed. Both employees found themselves in situations where they could render assistance to strangers, and both were killed as a result of their help. However, the facts of this case are more analogous to *Roberts*, 321 N.C. 350, 364 S.E.2d 417.

In *Roberts*, the plaintiff-employee was driving his car home after a business trip. He drove down an exit ramp and noticed that a car had struck a pedestrian. A bystander had already arrived at the scene of the accident to offer assistance. The plaintiff-employee stopped his car and offered to assist by contacting the highway patrol. He suggested that the bystander move up the exit ramp to warn oncoming traffic about the accident. The plaintiff-employee was standing by the pedestrian's body when he was struck by a car and killed.

As this Court said in *Roberts*, the required travel by the employee merely placed him in a position to seize the opportunity to rescue the person. *Id.* at 359, 364 S.E.2d at 423. The required travel did not increase the risk that the employee would be injured because not all hazards or risks are incidental to the employment. *Id.* Similar to the employee in *Roberts*, it was Roman's individual decision to apprehend the robber which actually created the danger and risk that he might be shot by the security guards.

Finally, contrary to plaintiffs' assertions in the instant case, Southland's handbook required its drivers to improve the public's perception of truck drivers merely by avoiding accidents, acting in a courteous manner, and obeying the law. The handbook did not give any instructions about assisting others in distress or emergency situations unrelated to the truck drivers' employment. The handbook cannot reasonably be interpreted to require Southland truck drivers to apprehend criminals in order to improve the public's perception of truck drivers. Further, as the deputy commissioner concluded in *Roberts*, "any resulting good will toward defendant-employer is too remote and immeasur[able] for his actions on this occasion to be con-

ROMAN v. SOUTHLAND TRANSP. CO.

[350 N.C. 549 (1999)]

sidered of any appreciable, even indirect, benefit to said employer." *Id.* at 353, 364 S.E.2d at 420. When the specific and crucial findings of fact are made, we believe the basic principles of both *Guest* and *Roberts* control the instant case.

With Chief Justice Mitchell and Justices Lake and Wainwright voting to affirm and Justices Frye, Parker and Orr voting to reverse, the decision of the Court of Appeals is affirmed without precedential value.

AFFIRMED.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice ORR dissenting.

The dispositive issue in this case, as noted in the Court of Appeals' majority opinion, is whether the Industrial Commission correctly concluded that Roman's fatal injury "arose out of his employment." Here, the uncontradicted facts show that Roman was killed while trying to apprehend the individual who had just robbed the Flying J Truck Stop where Roman had stopped to refuel while on a long-distance delivery run for his employer, Southland Transportation Company (Southland).

As indicated by the majority, for a claim to arise out of the employment and be compensable, the employee must "act[] for the benefit of his employer to an appreciable extent," but the claim will not be compensable "if the employee acts *solely* for his own benefit or purpose or if he acts *solely* for a third person." (Emphasis added.) Here, the Industrial Commission concluded that based upon the facts, Roman sustained a compensable injury by accident.

The responsibility of a reviewing appellate court is to determine if there is evidence of record to support the findings of fact and whether those findings of fact support the applicable conclusions of law and, ultimately, the award. Here, there was sufficient evidence, in my opinion, to support the following findings of fact:

6. On or about April 8, 1994, at 12:00 a.m., Mr. Roman was located inside the Flying J convenience store-restaurant when Robert Bankston stole seventy dollars from an open cash register operated by Kathy Adams. Ms. Adams screamed for help. The fuel desk cashier, Dona Becker, was at the fuel desk counter inside

the store when the robbery by Mr. Bankston took place. Ms. Becker "yelled, 'stop him.' " . . . Ms. Becker ran out of the store at that time.

7. Pursuant to the screams of both Ms. Adams and Ms. Becker, Luis Roman and another truck driver chased Mr. Bankston out of the store. Bankston entered a Ford Escort and attempted to drive away. Mr. Roman grabbed the steering wheel of the Ford Escort and forced Bankston to drive in circles in the Flying J Truck Stop parking lot. At some point, Mr. Roman was able to position himself through the window of the Ford Escort on the driver's side.

. . . .

9. Mr. Roman was shot and killed by one of the security guards while he was positioned inside the window of the Ford Escort.

. . . .

11. Plaintiff's job duties included performing activities that will help the public like truck drivers better. The defendant-employer provided a driver's handbook and safety manual that expressly informed its employees that their jobs as truck drivers as well as the future of the company and the trucking industry depended upon good public relations.

12. Mr. Roman's attempt to apprehend Bankston is an activity that would improve the public perception of truck drivers. His actions were not for the benefit of a third party only, but, rather, were beneficial to his employer and to himself as his employer's employee.

While a different finder of fact might determine otherwise (as the Court of Appeals and this Court's majority appear to do), we have repeatedly stated that the Commission is the ultimate finder of fact and that if there is *any* credible evidence to support the findings, the reviewing court is bound by it. *See Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998). This includes determining the credibility of witnesses and reaching inferences from the evidence. *See id.*

The above-cited findings of fact sufficiently support the Commission's conclusion that Roman sustained a compensable injury arising out of and in the course of his employment. The employer has contended that Roman's acts were gratuitous gestures

**WORD v. JONES**

[350 N.C. 557 (1999)]

unrelated to his employment that benefitted only the third party, Flying J. While Southland and the majority might well in good faith so find, that simply is not their prerogative. The Industrial Commission, the ultimate fact-finder, found, with some credible evidence to support it, that Roman's acts also benefitted his employer and himself as an employee of the employer. Thus, I would vote to reverse the Court of Appeals and affirm the Industrial Commission.

While this case has generated much discussion over whether *Guest* or *Roberts* controls, a straightforward application of workers' compensation law simply mandates that we affirm the Industrial Commission's decision. *Roberts v. Burlington Indus.*, 321 N.C. 350, 364 S.E.2d 417 (1988); *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 85 S.E.2d 596 (1955). In both *Roberts* and *Guest*, this Court ultimately affirmed the decision of the Industrial Commission, the fact-finding body charged with the administration of the Workers' Compensation Act. It is not at all clear, on the close facts of this case, that the Industrial Commission committed a "patent legal error" in concluding that Roman's death arose out of his employment. Accordingly, I would reverse the decision of the Court of Appeals, thus affirming the decision of the Industrial Commission.

Justices FRYE and PARKER join in this dissenting opinion.