ZACHARY, Judge.
 

 *627
 
 Trisha Wright, Administratrix of the Estate of Christopher Wright ("Plaintiff"), appeals from an Opinion and Award entered 22 June 2018 by the Full Commission of the North Carolina Industrial Commission. Plaintiff argues that the Industrial Commission erred by failing to conclude that Mr. Wright's death occurred in the course and scope of his employment. For the reasons explained below, we affirm.
 

 I. Background
 

 Alltech Wiring & Controls ("the Company") employed Mr. Wright as an Estimator. Mr. Wright's duties required him to visit client job sites to prepare estimates for the installation of security systems. On the vast majority of days, Mr. Wright would leave home in the morning and travel to the office before heading to a client job site. On some mornings, however, Mr. Wright would travel directly from his home to a job site. Similarly, on most days, Mr. Wright would leave a job site and return to the office before going home at the end of the workday. The Company provided Mr. Wright and other employees
 
 *221
 
 with company-owned work trucks in order to perform their work obligations. Mr. Wright used the work truck assigned to him for his commute, and for travel to and from job sites.
 

 On 1 February 2016, Mr. Wright left the office at approximately 5:29 p.m. and began driving home in his work truck. Mr. Wright spoke to Jerry Phillips, the owner of the Company, on his work cell phone from 5:27 p.m. to 5:40 p.m. Mr. Wright then stopped at a Target store on his way home, and from 5:43 p.m. to 5:54 p.m., his work truck was stationary with the ignition turned off. From 5:54 p.m. to 5:56 p.m., Mr. Wright spoke with his wife on the phone. At approximately 5:57 p.m., Mr. Wright collided with another vehicle on White Oak Road, a route he frequently used during his commute. At 7:00 p.m., Mr. Wright died as a result of his injuries.
 

 *628
 
 On 14 June 2016, Plaintiff filed a Form 18 claiming that Mr. Wright's dependents were entitled to death benefits. Defendants filed a Form 61 on 6 July 2016, denying that Mr. Wright's death occurred in the course and scope of his employment. Plaintiff filed a Form 33 requesting a hearing, and the matter came before Deputy Commissioner Melanie Wade Goodwin on 12 January 2017. On 22 March 2017, Deputy Commissioner Goodwin filed an Opinion and Award denying Plaintiff's claim for benefits. Plaintiff appealed to the Full Commission. After a hearing, on 22 June 2018, the Full Commission issued an Opinion and Award affirming the Deputy Commissioner's decision denying benefits.
 

 II. Appellate Jurisdiction
 

 Plaintiff filed a notice of appeal to this Court on 26 June 2018. However, on 28 November 2018, Defendants filed a motion to dismiss, arguing that pursuant to this Court's recent opinion in
 
 Bradley v. Cumberland County
 
 , the record on appeal failed to establish that Plaintiff's notice of appeal was timely filed.
 
 See
 

 Bradley v. Cumberland Cty.
 
 , --- N.C. App. ----, ----,
 
 822 S.E.2d 416
 
 , 417 (2018) (dismissing an appeal for lack of jurisdiction where the notice of appeal bore neither time nor file stamp, and the record contained no evidence "indicating if or when the Industrial Commission received Plaintiff's notice of appeal"),
 
 petition for disc. review filed
 
 , No. 438P18, --- N.C. ----, --- S.E.2d ---- (filed Dec. 14, 2018). Later that same day, Plaintiff filed a Motion to Add Portion to Record on Appeal to include a file-stamped copy of the notice of appeal and a letter from the Industrial Commission acknowledging its receipt. Plaintiff subsequently filed a Conditional Petition for Writ of Certiorari and Motion to Substitute Conditional Petition for Writ of Certiorari requesting review, should we deem the notice of appeal deficient in light of
 
 Bradley
 
 .
 

 Notwithstanding Defendants' arguments for dismissal, this Court's holding in
 
 Bradley
 
 was not exceptional. We merely reaffirmed the well-established rule that failure to timely file notice of appeal is a jurisdictional defect that precludes this Court's ability to review the merits of a case.
 
 See
 

 Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.
 
 ,
 
 362 N.C. 191
 
 , 198,
 
 657 S.E.2d 361
 
 , 365 (2008) (explaining that "the time limits for taking appeal may not be extended by any court" (internal ellipsis omitted)). "[A] jurisdictional default brings a purported appeal to an end before it ever begins."
 

 Id.
 

 The notice of appeal in
 
 Bradley
 
 was replete with defects; however, the fatal error was the absence of evidence-beyond the "date ... affixed by Plaintiff's counsel [but] ... not confirmed by proof of service"-that
 
 *629
 
 appeal was timely taken.
 
 Bradley
 
 , --- N.C. App. at ----,
 
 822 S.E.2d at 420
 
 . The notice was printed on the appellant's law firm's letterhead and addressed to a commissioner of the Industrial Commission, confirmation receipt requested.
 
 Bradley
 
 , --- N.C. App. at ----,
 
 822 S.E.2d at 417
 
 . Despite the inclusion of a statement that the notice was submitted via electronic filing portal, there was no evidence that it was timely filed, and the record was devoid of "any acknowledgement from the Industrial Commission indicating receipt" of the notice.
 
 Bradley
 
 , --- N.C. App. at ----,
 
 822 S.E.2d at
 
 420 ;
 
 cf.
 

 Jones v. Yates Motor Co.
 
 ,
 
 121 N.C. App. 84
 
 , 85,
 
 464 S.E.2d 479
 
 , 480 (1995) ("On 23 March 1994, the Commission advised plaintiff that it received his notice of appeal to the Court of Appeals."). Given the jurisdictional implications of a party's failure to timely and properly appeal, "[w]e will not
 
 *222
 
 assume the notice of appeal was timely filed solely based upon Plaintiff's unverified notice of appeal."
 
 Bradley
 
 , --- N.C. App. at ----,
 
 822 S.E.2d at 420
 
 .
 

 Moreover, although "the time limits for taking appeal may not be extended by any court[,]"
 
 Dogwood
 
 ,
 
 362 N.C. at 198
 
 ,
 
 657 S.E.2d at 365
 
 (internal ellipsis omitted), our Court has discretionary authority to issue a writ of certiorari in order "to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1). Unlike in
 
 Bradley
 
 , here, Plaintiff both requested review by certiorari and moved to amend the record to cure the jurisdictional defect prior to the date on which this case was heard by this Court.
 

 By orders entered 15 January 2019, this Court denied Defendants' Motion to Dismiss and granted Plaintiff's Motion to Add Portion to Record on Appeal.
 
 See
 

 Williams v. United Cmty. Bank,
 

 218 N.C. App. 361
 
 , 366-67,
 
 724 S.E.2d 543
 
 , 548 (2012) (granting the plaintiff's motion to amend the appellate record to add a notice of appeal and denying the defendant's motion to dismiss). Accordingly, we need not exercise our discretionary authority under Rule 21 in order to reach the merits of Plaintiff's appeal. Therefore, we dismiss as moot Plaintiff's Conditional Petition for Writ of Certiorari and Motion to Substitute Conditional Petition for Writ of Certiorari.
 

 III. Discussion
 

 Plaintiff argues that the Industrial Commission erred by failing to conclude that Mr. Wright's death occurred in the course and scope of his employment. We disagree.
 

 Upon appeal of a decision of the Industrial Commission, this Court is "limited to reviewing whether any competent evidence supports the
 
 *630
 
 Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law."
 
 Deese v. Champion Int'l Corp.
 
 ,
 
 352 N.C. 109
 
 , 116,
 
 530 S.E.2d 549
 
 , 553 (2000). "[T]he Commission's findings of fact are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary."
 
 Medlin v. Weaver Cooke Constr., LLC
 
 ,
 
 367 N.C. 414
 
 , 423,
 
 760 S.E.2d 732
 
 , 738 (2014) (quotation marks omitted). Unchallenged findings of fact are binding on appeal, and the Industrial Commission's conclusions of law are reviewed
 
 de novo
 
 .
 

 Id.
 

 For an injury to be compensable under the Workers' Compensation Act, a claimant must prove that: (1) the injury was caused by an accident; (2) the injury arose out of the claimant's employment; and (3) the injury was sustained in the course of that employment.
 
 Clark v. Wal-Mart
 
 ,
 
 360 N.C. 41
 
 , 43,
 
 619 S.E.2d 491
 
 , 492 (2005). " 'Arising out of the employment' refers to the origin or cause of the accidental injury, while 'in the course of the employment' refers to the time, place, and circumstances of the accidental injury."
 
 Roman v. Southland Transp. Co.
 
 ,
 
 350 N.C. 549
 
 , 552,
 
 515 S.E.2d 214
 
 , 216 (1999).
 

 Generally, under the "coming and going" rule, an injury is not deemed to occur "in the course of employment" when sustained in an accident during the employee's travel to or from work.
 
 Royster v. Culp, Inc.
 
 ,
 
 343 N.C. 279
 
 , 281,
 
 470 S.E.2d 30
 
 , 31 (1996). "This is because the risk of injury while traveling to and from work is one common to the public at large ...."
 
 Hollin v. Johnston Cty. Council on Aging
 
 ,
 
 181 N.C. App. 77
 
 , 80,
 
 639 S.E.2d 88
 
 , 91 (2007) (quotation marks omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 235
 
 ,
 
 659 S.E.2d 732
 
 (2008). Nevertheless, such an injury is compensable when
 

 (1) an employee is going to or coming from work but is on the employer's premises when the accident occurs (premises exception); (2) the employee is acting in the course of his employment and in the performance of some duty, errand, or mission thereto (special errands exception); (3) an employee has no definite time and place of employment, requiring her to make a journey to perform a service on behalf of the employer (traveling salesman exception); or (4) an employer contractually provides transportation or allowances to cover the cost of transportation (contractual duty exception).
 

 Id.
 

 *631
 
 Here, Plaintiff argued that Mr. Wright's accident fell under the contractual duty exception
 
 *223
 
 and the traveling salesperson exception to the "coming and going" rule.
 

 A.
 
 Contractual Duty Exception
 

 Under the contractual duty exception to the "coming and going" rule, an injury is compensable "where the employer furnishes the means of transportation ... as an incident to the contract of employment,"
 
 Smith v. City of Gastonia
 
 ,
 
 216 N.C. 517
 
 , 519,
 
 5 S.E.2d 540
 
 , 541 (1939), or where "the cost of transporting the employees to and from their work is made an incident to the contract of employment."
 
 Puett v. Bahnson Co.
 
 ,
 
 231 N.C. 711
 
 , 713,
 
 58 S.E.2d 633
 
 , 634 (1950). "The salient factor is whether provision for transportation is a real incident to the contract of employment."
 
 Tew v. E.B. Davis Elec. Co.
 
 ,
 
 142 N.C. App. 120
 
 , 123,
 
 541 S.E.2d 764
 
 , 767,
 
 appeal dismissed and disc. review denied
 
 ,
 
 353 N.C. 532
 
 ,
 
 548 S.E.2d 741
 
 , 742 (2001). "The transportation must be provided as a matter of right; if it is merely permissive, gratuitous, or a mere accommodation, the employee is not in the course of employment."
 
 Robertson v. Constr. Co.
 
 ,
 
 44 N.C. App. 335
 
 , 337,
 
 261 S.E.2d 16
 
 , 18 (1979),
 
 disc. review denied
 
 ,
 
 299 N.C. 545
 
 ,
 
 265 S.E.2d 405
 
 (1980).
 

 In the instant case, the Industrial Commission made the following findings of fact concerning the contractual duty exception, which Plaintiff challenges:
 

 4. [The Company] provided Mr. Wright and other employees with a company-owned work truck. There was no written or oral contract entitling Mr. Wright to use the work truck. Use of the work truck was not part of the employment contract.
 

 ....
 

 6. Company-owned vehicles were available to most employees of [the Company]. Mr. Phillips testified that, in the past, he had ceased allowing employees to use company vehicles because gas prices became too expensive. According to Mr. Phillips, when use of company vehicles was not permitted, employees used their personal vehicles. Mr. Phillips testified that employees were not reimbursed for their mileage commuting to and from home when they drove their personal vehicles. Additionally, when use of company vehicles was not allowed, employees were not
 
 *632
 
 given any additional compensation for fuel for their personal vehicles to commute to and from home.
 

 ....
 

 8. According to [the Company's] employee handbook: "An employee who travels in a company vehicle from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he/she works at a fixed location or at different job sites. Normal travel from home to work is not work time."
 

 ....
 

 13. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that Mr. Wright was not entitled, through an express or implied contract, to the work truck provided by [the Company]. The work truck was provided gratuitously by [the Company] as an accommodation.
 

 The Commission concluded as a matter of law that "Mr. Wright and the other employees of the Company were provided work trucks as an accommodation rather than as a matter of right consequent of an express or implied contract. The employee handbook makes clear that commuting to and from work is not considered work time."
 

 The gratuitous provision of transportation to an employee does not by itself expose an employer to liability under the Workers' Compensation Act.
 
 Insurance Co. v. Curry
 
 ,
 
 28 N.C. App. 286
 
 , 290,
 
 221 S.E.2d 75
 
 , 78,
 
 disc. review denied
 
 ,
 
 289 N.C. 615
 
 ,
 
 223 S.E.2d 396
 
 (1976). In
 
 Curry
 
 , the employer permitted the employee to use a company vehicle to transport himself and two other employees to and from work.
 
 Id.
 
 at 287,
 
 221 S.E.2d at 76
 
 . While driving the company vehicle to work one day, the employee was involved in a traffic accident and died.
 

 Id.
 

 The trial court found
 
 [1]
 
 and this Court affirmed that (1) the
 
 *224
 
 deceased employee and his passengers were not performing any work for their employer in the company vehicle at the time of the accident; (2) the employees' work day started when they arrived at the employer's place of business;
 
 *633
 
 (3) the employees were not contractually entitled to the transportation provided by the employer; (4) the employees were not required by the employer to use the company vehicle in traveling to and from work; and (5) the transportation provided by the employer "was gratuitous and merely an accommodation."
 
 Id.
 
 at 288, 290,
 
 221 S.E.2d at 77, 78
 
 . Based on those findings, this Court determined that the incident did not fall within the contractual duty exception and affirmed the trial court's decision.
 
 Id.
 
 at 290,
 
 221 S.E.2d at 78
 
 .
 

 Here, competent evidence exists to support the challenged findings of fact relating to the contractual duty exception. Mr. Phillips, owner of the Company, testified that Mr. Wright had not signed a contract entitling him to daily use of a company vehicle, and that there were times when Mr. Wright drove one of Mr. Phillips's personal cars. Mr. Phillips further testified that due to high gas prices, he once temporarily suspended the use of work vehicles by his employees, but after gas prices dropped, he allowed his employees to use the work trucks again. When asked, "[i]f you wanted to right now, could you take those vehicles away from your employees and say, 'You have to drive your own vehicle home[?]' " Mr. Phillips responded by saying, "I mean, I could." Mr. Phillips explained that he has "pulled trucks away from people on and off[,]" and that when employees use their personal vehicles, he does not reimburse them for their travel expenses. Mr. Phillips also stated that he remembered Mr. Wright driving his personal vehicle to work "maybe once or twice, couple of times."
 

 Mr. Phillips's testimony demonstrates that his employees' use of the company's work trucks was permissive, neither required nor a matter of right. Plaintiff argues that Defendants presented no evidence that Mr. Wright worked for the Company during the time that Mr. Phillips restricted use of the work trucks because of high gas prices. That contention is irrelevant. This testimony simply demonstrated the permissive use of the work trucks, in that Mr. Phillips could revoke the use of company vehicles at will.
 

 Plaintiff also contends that the Industrial Commission erred by basing its decision on an employment handbook that was neither applicable to Mr. Wright nor in effect at the time of his death. We determine that notwithstanding the finding in which the Commission quotes from the employment handbook, there was substantial competent evidence to support the Industrial Commission's conclusion that Mr. Wright's accident did not fall within the contractual duty exception.
 

 *634
 
 As in
 
 Curry
 
 , Defendants did not require that Mr. Wright use the work truck for his commute, and the provision of the truck was a gratuitous accommodation that benefitted both parties.
 

 Id.
 

 A benefit to either or both parties does not give rise to an implied contract.
 
 See
 

 Tew
 
 ,
 
 142 N.C. App. at 124-25
 
 ,
 
 541 S.E.2d at 767-68
 
 . Accordingly, the Industrial Commission's findings of fact support its conclusion that the facts of Plaintiff's case do not fall within the contractual duty exception to the "coming and going" rule.
 

 B.
 
 Traveling Salesperson Exception
 

 Under the traveling salesperson exception, "[i]f travel is contemplated as a part of the work, accident in travel is compensable."
 
 Ross v. Young Supply Co.
 
 ,
 
 71 N.C. App. 532
 
 , 537,
 
 322 S.E.2d 648
 
 , 652 (1984). However, because traveling to and from work is common to most every job, an injured employee who has fixed hours and a fixed place of work does not fall within the traveling salesperson exception.
 
 See
 

 Hunt v. Tender Loving Care Home Care Agency, Inc.
 
 ,
 
 153 N.C. App. 266
 
 , 269-70,
 
 569 S.E.2d 675
 
 , 678,
 
 disc. review denied
 
 ,
 
 356 N.C. 436
 
 ,
 
 572 S.E.2d 784
 
 (2002). The employee's injury must arise during travel connected to the employment.
 
 See
 

 id.
 
 at 269,
 
 569 S.E.2d at 678
 
 ("Whether the travel is part of the service
 
 *225
 
 performed is also significant." (quotation marks omitted)).
 

 The Industrial Commission made the following findings of fact concerning the traveling salesperson exception:
 

 2. [Mr. Wright] would travel from the office to the client job site. Occasionally, he would travel directly from his home to a client job site, but the vast majority of days, he would drive directly from his home to the office. Similarly, Mr. Wright would occasionally drive directly from a job site to his home at the end of the day, but most of the time he drove back to the office after visiting a client job site ....
 

 3. Mr. Wright was a salaried employee and he generally worked from 7:30 a.m. to 4:30 p.m. Sometimes Mr. Wright worked outside those hours at night and on weekends, which is documented on his time sheets. Mr. Wright also sometimes worked from home.
 

 ....
 

 11. ... Mr. Wright left the office at 5:29 pm and began to drive home in his work truck. He spoke with Mr. Phillips, on the work cell phone from 5:27 p.m. to 5:40 p.m. Mr.
 
 *635
 
 Wright stopped at Target on his way home, and the GPS logs in evidence show that the ignition was turned off from approximately 5:43 p.m. to 5:54 p.m., although the nature and purpose of the stop is unknown. Mr. Wright spoke with his wife from 5:54 p.m. to 5:56 p.m. At approximately 5:57 p.m., Mr. Wright was involved in a motor vehicle accident on White Oak Road. White Oak Road was on the route Mr. Wright frequently used when commuting between the office and his home. ...
 

 12. ... Mr. Wright was fatally injured while he was driving home from [the Company's] fixed place of business, where he had primarily worked most of that day during [the Company's] regular working hours. There is no evidence in the record showing that Mr. Wright was on his way to a job site, or that he was acting in the course of his employment at the time of the accident. Mr. Wright was not utilizing his work cell phone, laptop, or tablet or acting in furtherance of his job duties at the time of the accident.
 

 Based on these facts, the Industrial Commission concluded as a matter of law that Mr. Wright's injuries did not fall within the traveling salesperson exception of the "coming and going" rule.
 

 On appeal, Plaintiff challenges findings of fact numbers 2 and 12. However, in order for the traveling salesperson exception to apply, the employee cannot have a fixed place of work or fixed hours and must be injured while performing work duties for the employer. In
 
 Thornton v. Richardson Company
 
 , the employee was a traveling salesperson who worked from his employer's place of business in Raleigh.
 
 258 N.C. 207
 
 , 207,
 
 128 S.E.2d 256
 
 , 256 (1962). The employee was driving a station wagon provided by his employer on Highway 17 in South Carolina at 2:40 a.m. when he was involved in a fatal head-on collision.
 
 Id.
 
 at 207-08,
 
 128 S.E.2d at 256-57
 
 . Our Supreme Court affirmed the Industrial Commission's decision denying compensation because "[t]here [was] no evidence in the record tending to show that the deceased had any duties to perform for his employer in the vicinity where the fatal accident occurred and at the time of night it occurred."
 
 Id.
 
 at 208,
 
 128 S.E.2d at 257
 
 .
 

 In the instant case, competent evidence similarly supports the Industrial Commission's finding that "[t]here is no evidence in the record showing that Mr. Wright was on his way to a job site, or that he was
 
 *636
 
 acting in the course of his employment at the time of the accident." Phone records and Mr. Phillips's testimony established that Mr. Wright called Mr. Phillips at 5:27 p.m. and they spoke for thirteen minutes. GPS logs of Mr. Wright's truck show that on the day of the accident, Mr. Wright left the Company's office around 5:30 p.m. and took his normal route home. The GPS logs also revealed that Mr. Wright's vehicle stopped at 7313 White Oak Road in Garner from 5:43 p.m. to 5:54 p.m. Mrs. Wright testified that Mr. Wright stopped at a Target store. Then at 5:54 p.m., Mr. Wright called her cell phone and they spoke for two minutes. At 5:57 p.m., the work truck's GPS stopped recording further movement.
 
 *226
 
 Plaintiff argues that Mr. Wright was working on his way home because he was talking to Mr. Phillips, but after that phone conversation ended, Mr. Wright stopped at Target and then called his wife. If Mr. Wright was working during the drive home, that work most likely ended upon termination of his phone call with Mr. Phillips.
 

 Furthermore, there was also competent testimony that Mr. Wright had a fixed work location with fixed hours. Mr. Phillips testified that on most days Mr. Wright would come to the office to begin his workday. Mrs. Wright's testimony and Mr. Wright's time sheets established that he generally worked from 7:00 a.m. to 4:30 p.m. every workday. Record evidence, including time sheets and GPS logs, demonstrated that Mr. Wright usually started and ended his work day at the office. This evidence supports the Industrial Commission's finding that on the vast majority of days Plaintiff would travel from his home to the office. Thus, the Industrial Commission's findings support the conclusion that Plaintiff did not fall within the traveling salesperson exception to the "coming and going" rule.
 

 IV. Conclusion
 

 Competent evidence supports the Industrial Commission's findings of fact, and those findings support the Industrial Commission's conclusions that Plaintiff did not fall within either the contractual duty or traveling salesperson exceptions to the "coming and going" rule. Accordingly, we affirm the decision of the Industrial Commission.
 

 AFFIRMED.
 

 Judges TYSON and COLLINS concur.
 

 [1]
 

 While this case arose under the Declaratory Judgment Act and not under the Workers' Compensation Act via the Industrial Commission, this Court applied the provisions of the Workers' Compensation Act in determining whether the accident arose out of and in the course of employment.