DARRELL G. HEMRIC, EMPLOYEE, PLAINTIFF v. REED AND PRINCE MANUFACTURING COMPANY, EMPLOYER, AND TRAVELERS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8110IC84

(Filed 20 October 1981)

Master and Servant § 59— workers' compensation—injuries from shooting by co-worker's boyfriend—accident not arising out of employment

Injuries received by plaintiff at his place of employment when the boyfriend of a co-worker shot both plaintiff and the co-worker did not arise out of his employment where the assault resulted from the personal relationship between the co-worker and her boyfriend and was not created by or reasonably related to the employment, notwithstanding plaintiff was present in the office in which the shooting occurred because he had been instructed to keep a record of the co-worker's hours.

APPEAL by plaintiff from Opinion and Award of the North Carolina Industrial Commission entered 25 September 1980. Heard in the Court of Appeals 2 September 1981.

In this proceeding plaintiff sought compensation for injuries he received at his place of employment when he was shot by the boyfriend of a co-worker. The parties stipulated that the provisions of the Workers' Compensation Act controlled the action, that an employer-employee relationship existed between the plaintiff and defendant-employer, that defendant insurance company was the carrier, and that plaintiff's average weekly wage was $192.31. Plaintiff appealed from the denial of benefits by the North Carolina Industrial Commission.

Defendant Reed and Prince Manufacturing Company is a Massachusetts-based corporation with a regional warehouse-office facility located in High Point, North Carolina. Mr. R. J. Smith was regional manager for defendant-employer and in charge of the operations in High Point. Plaintiff was employed as an inside sales and purchasing agent by defendant-employer. The High Point office had four other employees in addition to plaintiff, one of whom was Doris M. Hicks, an office secretary.

Hicks had a boyfriend named Jimmy Lee Williams. During the two years of her employment, Hicks talked freely with her co-workers about the volatile and sometimes violent nature of her relationship with Williams. On one occasion Williams assaulted Hicks while on the business premises. When Hicks tried to end her relationship with Williams, he began to threaten her and made harassing telephone calls to her during business hours at least five or six times a day. Hicks was afraid of Williams and carried a pistol in her pocketbook for protection. Several days before the shooting, Williams placed an obscene message about Hicks on the front door of the business. This incident was reported to the High Point Police and investigated by them. Several employees feared for their personal safety from Williams after this occurred.

After repeated complaints by other workers in the office that Hicks was not adequately performing her job because of her involvement with Williams, Smith decided to fire her. Another reason for this decision to terminate Hicks' employment was Smith's growing concern that Williams "was like a time-bomb" and might do some harm. Smith asked plaintiff to keep a record of Hicks' working hours so that he could use her tardiness as justification for firing her.

On the morning of 16 May 1978, plaintiff arrived at work at 8:05 a.m. It was his custom to go to the office and then go to the post office to pick up the mail for defendant-employer. However, since he was keeping a record of Hicks' working hours, plaintiff remained at his desk until Hicks' arrival at 8:25 a.m. Upon Hicks' arrival, Williams appeared from a place where he had been hiding and fired three rifle shots at Hicks, killing her. Before fleeing, he fired four shots at plaintiff, seriously injuring him. Williams was later convicted of murder and assault with a deadly weapon with intent to kill.

In a hearing before the Deputy Commissioner of the North Carolina Industrial Commission, on 12 April 1979, plaintiff's claim for benefits under the Workers' Compensation Act was allowed. The Deputy Commissioner found that defendant-employer's retention of Hicks as an employee increased the risk that other employees would be assaulted, and that plaintiff's injuries arose out of and in the course of his employment.

Upon appeal by defendant, the Full Industrial Commission set aside the award of benefits to plaintiff. It found that the assault on plaintiff was unrelated to his employment and did not arise out of the employment, and therefore denied plaintiff's claim. One Commissioner filed a dissenting opinion.

Plaintiff appealed the decision of the Full Commission to this Court.

*Schoch, Schoch and Schoch by Arch Schoch, Jr. and Aaron N. Clinard for plaintiff appellant.*

*Hutchins & Tyndall by Richard Tyndall and Richard D. Ramsey for defendant appellees.*

CLARK, Judge.

In an appeal from a decision by the Industrial Commission, the scope of review is limited to a determination of whether the Commission's findings of fact are supported by competent evidence and whether the conclusions of law are supported by the findings. In order to be compensable under the Workers' Compensation Act, an injury must result from an accident arising out of and in the course of employment. G.S. 97-2(6); *Barham v. Food World,* 300 N.C. 329, 266 S.E. 2d 676, *rehearing denied,* 300 N.C. 562 (1980). Whether the injury arose out of and in the course of employment is a mixed question of fact and law, and where there is evidence to support the Commission's findings, this Court is bound by them. *Barham v. Food World, supra; Hollar v. Furniture Co.,* 48 N.C. App. 489, 269 S.E. 2d 667 (1980).

This appeal presents only the question of whether plaintiff's injuries arose out of his employment with defendant-employer. The parties have stipulated that plaintiff's injuries resulted from

Hemric v. Manufacturing Co.

an accident within the meaning of the Workers' Compensation Act, and his injuries clearly occurred in the course of his employment.

In *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977), the Supreme Court stated that the test of whether an injury "arises out of" the employment is:

> "whether the injury is a natural and probable consequence of the nature of the employment. A contributing proximate cause of the injury must be a risk to which the employee is exposed because of the nature of the employment. This risk must be such that it 'might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test "excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. . . ." ' *Bartlett v. Duke University*, 284 N.C. 230, 233, 200 S.E. 2d 193, 195 (1973). In other words, the ' "causative danger must be peculiar to the work and not common to the neighborhood. . . ." ' *Harden v. Furniture Co., supra*, [199 N.C. 733] at 735, 155 S.E. at 730."

*Id.* at 404, 233 S.E. 2d at 532-533.

The court in *Gallimore* relied on *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E. 2d 350 (1972), where the facts are somewhat similar to the facts in the case *sub judice*. In *Robbins* the claimants were the survivors of two deceased employees of a grocery store. The estranged husband of one of the employees entered the store and shot his wife and a co-worker. The shootings had their origin in domestic problems. The husband was jealous, accused her of "running around" with her co-worker, and had gone to the store and threatened to kill them. He also threatened to kill her employer if he continued to employ her. The Court reversed the Commission award to the survivors, holding that to be compensable the injury must be caused by a risk which is reasonably related to and created by the employment, and since the origin of the shootings was in the domestic problems of the husband and wife and not in the employment, the claimants could not recover.

The plaintiff makes the argument that *Robbins* is distinguishable on the facts in that in the case before us the violent nature of the Hicks-Williams relationship was a continuing one and that the deceased was given the responsibility of keeping a time record of Hicks' work, which required the claimant to be present in the office at the time of the shooting. But we find these factors present also in *Robbins* where there was a continuing threat of death and the duties of the co-workers required their presence at the store with the intimidated employee. Further, in *Robbins* the risk of death or bodily injury to co-workers was greater in that the threat of death by the outsider included other co-workers and was not limited, as in the case *sub judice*, to a threat against the one worker involved in the personal relationship with the outsider.

The *Gallimore* and *Robbins* cases are authority for the principle of law that an injury is not compensable when it is inflicted in an assault upon an employee by an outsider as the result of a personal relationship between them, and the attack was not created by and not reasonably related to the employment. The assault must have had such a connection with the employment that it can be logically found that the nature of the employment created the risk of the attack. *See* 8 Strong's N.C. Index 3d *Master and Servant* § 59 (1977), and 82 Am. Jur. 2d, Workmen's Compensation § 329 (1976).

Plaintiff also argued that, had it not been for Smith's instructions to plaintiff that he keep a record of Hicks' hours, he would have been at the post office and not in the office at the time of the shooting. The shooting of plaintiff, and also the shootings of the employees in *Robbins v. Nicholson, supra,* occurred on the premises not because the victim was performing the duties of employment at the time of the assault, but merely because he was present on the premises. The serious injuries which plaintiff sustained were caused by the vicious and unreasoned criminal act of Williams, not by an accident arising out of plaintiff's employment.

Where the employee is injured in the course of employment by an outsider because of hate, jealousy, or revenge based on a personal relationship, the fact that the employer has knowledge of prior threats of death or bodily harm does not result in the injury's arising out of the employment. To allow compensation under such circumstances would have the practical effect of plac-

ing on the employer the duty of yielding to such threats of violence and terminating the employment of any worker so threatened. This would saddle the employer with a grossly unfair burden and the employee, in many cases, with an unjust job termination.

We find that the evidence was sufficient to support the Industrial Commission's findings of fact and that these findings support the Commission's denial of plaintiff's claim for Workers' Compensation benefits since plaintiff's injury did not arise out of his employment.

Affirmed.

Chief Judge MORRIS and Judge WELLS concur.