JAMES J. RORIE, GUARDIAN AD LITEM FOR CHICO RORIE, MINOR SON; RACHEL L. RORIE, DECEASED, EMPLOYEE PLAINTIFF v. HOLLY FARMS POULTRY COMPANY, EMPLOYER AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 181A82

(Filed 5 October 1982)

1. **Master and Servant § 57— workers' compensation—interpretation of "willful intent to injure another"—fight between employees**
    The bar to recovery, set forth in G.S. 97-12(3) of the Workers' Compensation Act, applies when a general willful intent to inflict some injury is established by the evidence. Therefore, where the evidence showed that two employees exchanged angry words at work, expressed threats towards one another to co-workers, that plaintiff's mother waited for the other employee outside the plant where they argued again, that plaintiff's mother followed the other employee to the other employee's car, that a fight ensued and that plaintiff's mother was stabbed and killed, there was ample evidence to support the Industrial Commission's finding that plaintiff's mother acted with the willful intent to injure another.

2. **Master and Servant § 56— workers' compensation—fight between employees—proximate cause**
    Under G.S. 97-12, for the claimant's injuries to be proximately caused by her actions, the willful intention of the claimant must be more than *a* cause of

her injuries; however, it need not be the *sole* cause. The claimant's injuries must be the result of a natural and continuous sequence of events, unbroken by a new independent cause, stemming from the claimant's willful intention to injure himself or another, and it is necessary that *some* injury be foreseeable from the claimant's action.

Justice MARTIN did not participate in the consideration or decision of this case.

APPEAL as a matter of right, pursuant to G.S. 7A-30(2), from the decision of the Court of Appeals, one judge dissenting, reported at 56 N.C. App. 331, 289 S.E. 2d 78 (1982). The plaintiff appealed from the Opinion and Award of the North Carolina Industrial Commission filed 29 August 1980 denying the plaintiff's claim for compensation. The Court of Appeals vacated and remanded the award of the Commission in an opinion by *Judge,* now *Justice, Harry C. Martin* with *Judge Wells* concurring and *Judge Arnold* dissenting.

*F. D. Poisson, Jr. and Larry E. Harrington, for plaintiff appellee.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Philip R. Hedrick, James F. Wood, III and Hatcher B. Kincheloe and McElwee, McElwee, Cannon & Warden, by William C. Warden, Jr. for defendant appellants.*

MITCHELL, Justice.

The plaintiff brought this action before the Industrial Commission seeking death benefits under the Workers' Compensation Act. The Deputy Commissioner found that the decedent's death was accidental and arose out of and in the course of the employment but that the compensation must be denied under the terms of G.S. 97-12(3) because the death was proximately caused by the willful intention of the decedent to injure another. By a two to one vote the Full Commission upheld the opinion of the Deputy Commissioner, and the plaintiff appealed to the Court of Appeals. The Court of Appeals, with one judge dissenting, vacated the Commissioner's award and allowed recovery. For the reasons stated herein, we reverse.

The decedent, Rachel L. Rorie, was stabbed to death on 19 April 1979 by a co-worker, Beverly Thompson, in the parking lot

of defendant-employer's poultry processing plant. Both women worked in the labeling department weighing and labeling chickens. They were working the second shift which began at 5:00 p.m. and continued until the work was finished at approximately 2:00 or 3:00 a.m.

The two women did not know each other before they began working at the poultry plant. Thompson testified that they did not talk to each other often, but that whenever they did speak they were hostile. Thompson stated that the cause of their frequent arguments was "[Rorie] said I was talking about her, and ought to stay home with my husband." There was also evidence that Rorie was angry because she believed that Thompson had caused packing boxes to fall off the chute and strike Rorie. On the night of her death, Rorie yelled to Thompson that she was "tired of you hitting me with these boxes."

During the shift on April 19th the two women argued and exchanged angry words. Rorie told a co-worker that she was "going to get" Thompson. As she was leaving, she challenged Thompson to "settle this, once and for all." Rorie, who was one of the first to leave, waited on the steps outside the plant until Thompson, who was one of the last to leave, emerged. The two began arguing, and a friend of Rorie's urged her to leave.

After a brief argument, the women walked across the property towards the parking lot. Rorie's car was parked to the left of the gate leading to the parking lot and Thompson's car was parked to the right. Rorie followed Thompson to Thompson's car and blocked her access to the driver's side of the car. Thompson walked to the passenger side, unlocked the door and was only able to open the door enough to put her wrap, pocket book, and keys in the car. According to Thompson, when she turned around, Rorie "was on me in my face, fussing, and she had my back pinned up against the car." Thompson pushed Rorie and a fight ensued. A knife "was produced" and "ended up" in Thompson's hand and she stabbed Rorie at least ten times, causing her death.

One witness stated that Thompson had the knife behind her back when the two women were arguing on the steps. Thompson testified that Rorie "came down at me with a knife" and that she was able to get it away from her. She does not remember stab-

bing Rorie. No other witness could corroborate either of these conflicting versions.

The parties stipulated that the parking lot where Rorie was killed was leased by the defendant Holly Farms for the use of its employees. The Deputy Commissioner found as fact and concluded as a matter of law that the accidental death of Rachel Rorie arose out of and in the course of her employment with Holly Farms Poultry Company. He ruled, however, that pursuant to G.S. 97-12(3) no compensation was payable because the death was proximately caused by the willful intention of the decedent to injure another.

[1] This is a case of first impression involving the construction of G.S. 97-12(3), which provides that, "No compensation shall be payable if the injury or death to the employee was proximately caused by: . . . (3) His willful intention to injure or kill himself or another." The statute presents an affirmative defense to a claim under the Workers' Compensation Act. It requires a finding that the claimant had the willful intention to injure or kill himself or another and that this intention was the proximate cause of the claimant's injuries. Since G.S. 97-12(3) is an affirmative defense, the burden of proof is on the employer to show that compensation should be denied notwithstanding the fact that the injury arose out of and in the course of the employment.

The purpose of the Workers' Compensation Act is twofold. It was enacted to provide swift and sure compensation to injured workers without the necessity of protracted litigation. *Barnhardt v. Cab Company*, 266 N.C. 419, 146 S.E. 2d 479 (1966). This Court has long held that the Act "should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretations." *Johnson v. Hosiery Company*, 199 N.C. 38, 40, 153 S.E. 591, 593 (1930). The Act, however, also insures a limited and determinate liability for employers, and the court cannot legislate expanded liability under the guise of construing a statute liberally. *Barnhardt v. Cab Company*, 266 N.C. 419, 146 S.E. 2d 479 (1966). The rule of statutory construction is to give the legislative intent full effect when interpreting the language of the statute. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). While the Act should be liberally construed to benefit the employee, the plain and unmistakable

language of the statute must be followed. *Hardy v. Small,* 246 N.C. 581, 99 S.E. 2d 862 (1957).

In order for the affirmative defense provided by G.S. 97-12(3) to apply there must have been a willful intention to injure. A willful act is done intentionally and purposely, rather than accidentally or inadvertently. *See* BLACK'S LAW DICTIONARY, 1434 (5th ed. 1979). The willful intention must be directed toward injury to the actor or to another. Neither acts by the claimant, nor mere words spoken by the claimant and unaccompanied by any overt act, will be sufficient to bar compensation unless the willful intent to injure is apparent from the context and nature of the physical or verbal assault. However, no intent to inflict "serious" injury must be shown before the statutory bar to recovery will apply. The bar to recovery, set forth in G.S. 97-12(3), applies when a general willful intent to inflict some injury is established by the evidence.

The intent of the actor must be discerned by a careful examination of the evidence presented. Intent is usually proved by circumstantial evidence and is therefore reserved for the trier of fact. A finding by the trier of fact of intent, or the lack thereof, will not be disturbed unless there is no evidence to support such a finding. *Anderson v. Construction Co.,* 265 N.C. 431, 144 S.E. 2d 272 (1965). This is true even though the evidence may support a contrary finding of fact. *Rice v. Chair Company,* 238 N.C. 121, 76 S.E. 2d 311 (1953).

Although Rorie may not have struck the first blow, there is ample evidence to support the Industrial Commission's finding that she acted with the willful intention to injure another. There was uncontradicted evidence that the two women were frequently arguing with each other and that they had exchanged blows a few months earlier. In the previous fight, Rorie had struck the first blow. During the evening of the fatal fight, Rorie stated that she was "going to get" Thompson and that they would "settle this once and for all." Rorie was one of the first to leave that night, but she waited outside the plant for Thompson, who was one of the last to leave. After a brief argument, Rorie followed Thompson to the parking lot. Rorie walked in the opposite direction of her own car to Thompson's car and blocked Thompson's path. She was arguing and "cussing" and "in [Thompson's] face" and pinned

Thompson to her car. Following these actions, Thompson pushed Rorie and the fatal fight ensued.

Although the evidence conflicts as to which woman produced the knife, the resolution of this issue is not essential to the disposition of this appeal. The crucial question is whether Rorie had a willful intention to injure Thompson. The fact that Thompson may have produced the knife and therefore escalated the fight is immaterial. Rorie may not have intended to kill or even seriously injure Thompson, but G.S.97-12(3) does not require that any such intent be shown before recovery will be denied. There was clear evidence that Rorie intended some injury. To hold that the extent of the injury must have been intended or foreseeable would result in a denial of compensation if Rorie had suffered a bloody nose or a sprained ankle, while awarding compensation because she was killed. The evidence supports the finding that the defendant carried its burden of proving that Rorie's actions demonstrated her willful intention to injure Thompson.

[2] Once willful intention has been established, in order to deny recovery it is necessary to find that the claimant's injuries were "proximately caused by" an act resulting from such intent. The Court of Appeals applied the *sole* proximate cause test that was first used in *Inscoe v. Industries, Inc.,* 30 N.C. App. 1, 226 S.E. 2d 201 (1976), *affirmed on other grounds,* 292 N.C. 210, 232 S.E. 2d 449 (1977). In reviewing *Inscoe,* this Court held that it was not necessary to reach the question of proximate cause. We now hold that the sole proximate cause standard is inapplicable to G.S. 97-12.

*Inscoe* interpreted the former G.S. 97-12. In 1977, the General Assembly passed an amendment to the Act which changed the language from a denial of compensation if the injury was "occasioned by" the claimant's acts to a denial if the injury was "proximately caused by" claimant's willful acts. For the claimant's injuries to be proximately caused by her actions, the willful intention of the claimant must be more than *a* cause of her injuries. However, it need not be the *sole* cause. Rather, a cause in fact standard is required.

G.S. 97-12 was designed to be an exception to the general rule that the employee would receive compensation for an injury arising out of and in the course of employment. *Vause v. Equip-*

*ment Company*, 233 N.C. 88, 63 S.E. 2d 173 (1951). To utilize a "sole" cause standard would virtually vitiate the statute and defeat the express will of the General Assembly. Whenever an employee intends to injure another, that employee will usually not be injured unless the intended victim retaliates. The actions of the intended victim could always be considered *a* cause of the claimant's injuries, and therefore the willful intention of the claimant would rarely if ever be the sole cause.

Using a cause in fact standard, the claimant's injuries must be the result of a natural and continuous sequence of events, unbroken by a new independent cause, stemming from the claimant's willful intention to injure himself or another. *See,* 9 Strong's N.C. Index 3d, Negligence, § 8. It is also necessary that *some* injury be foreseeable from the claimant's actions, although the extent or nature of the injury suffered need not have been foreseen. The determination of the proximate cause of the claimant's injuries is a question for the finder of fact. *Osborne v. Ice Company*, 249 N.C. 387, 106 S.E. 2d 573 (1959). The Deputy Commissioner found that the deceased had the willful intention to injure another and that this intent was the proximate cause of her death. There is sufficient evidence to support this finding.

The decision of the Court of Appeals is reversed and this cause is remanded to the Court of Appeals with directions that the order of the Industrial Commission be reinstated.

Reversed and remanded.

Justice MARTIN did not participate in the consideration or decision of the case.