SHELBY J. DODSON, WIDOW AND PERSONAL REPRESENTATIVE OF THE ESTATE OF JOHN E. DODSON, DECEASED, EMPLOYEE, PLAINTIFF v. DUBOSE STEEL, INC., EMPLOYER, AND AMERICAN MANUFACTURERS MUTUAL, CARRIER, DEFENDANTS

No. COA02-543

(Filed 15 July 2003)

**Workers' Compensation— injury and death arising out of employment—workplace assault**

The Industrial Commission did not err in a workers' compensation case by concluding that the evidence in the record supports the Commission's findings 11, 12, and 14, which in turn support its conclusions of law, that decedent truck driver's injury and death were rooted in the pertinent traffic merging incident involving a dispute over decedent's driving and that it arose out of decedent's employment, because: (1) the Commission properly analyzed this case according to assault cases when the incident was more closely analogous to a workplace assault than to any of the factual scenarios underpinning defendant's proposed alternative theories; (2) the dispute had as its root cause the merging incident which was related to driving and to the basic nature of decedent's work as a truck driver; (3) neither the appreciable benefits or increased risk analysis apply when decedent was driving his truck in the course of his business for defendant employer; and (4) defendant failed to prove by the greater weight of the evidence that decedent's injury and death

1

DODSON v. DUBOSE STEEL, INC.

[159 N.C. App. 1 (2003)]

resulted from decedent's willful intention to injure or kill himself or another.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by defendants from opinion and award entered 18 January 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 February 2003.

*Lore & McClearen, by R. James Lore, and Johnson & Parsons, P.A., by Dale P. Johnson, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Maura K. Gavigan and Erin D. Eveson, for defendant-appellants.*

HUDSON, Judge.

Defendants Dubose Steel, Inc. (Dubose) and American Manufacturers Mutual appeal an opinion and award entered 18 January 2002 by the North Carolina Industrial Commission that awarded plaintiff medical expenses, death benefits and the statutory $2,000 toward burial expenses, for the injury that led to the death of her husband. For the reasons that follow, we affirm.

## BACKGROUND

Plaintiff's decedent John Dodson (Dodson), was employed by defendant Dubose as a truck driver, and was driving a load of steel to Virginia for his employer on 27 September 1999. As a result of the events at issue here, Dodson was struck by a vehicle while outside of his truck, and fell to the pavement on his head. After several days without regaining consciousness, Dodson died. His widow Shelby Dodson, the plaintiff, filed claims for workers' compensation benefits due while Dodson was still alive, and for death benefits.

The claims were consolidated and heard 27 September 2000, and, in an opinion and award filed on 30 November 2000, Deputy Commissioner William C. Bost found and concluded that Dodson's injury and death arose out of and in the course of his employment, and awarded benefits to plaintiff.

In an opinion and award filed 18 January 2002 by Commissioner Bernadine Ballance, the Full Commission essentially re-wrote the findings of fact and conclusions of law, but awarded the same benefits. Defendants now appeal.

**DODSON v. DUBOSE STEEL, INC.**

[159 N.C. App. 1 (2003)]

## ANALYSIS

### A. The Standard of Review

On appeal of a worker's compensation decision, we are "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). An appellate court reviewing a worker's compensation claim "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation and quotation marks omitted), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). In reviewing the evidence, we are required, in accordance with the Supreme Court's mandate to construe the Workers' Compensation Act in favor of awarding benefits, to take the evidence "in the light most favorable to plaintiff." *Id.*

The Full Commission is the "sole judge of the weight and credibility of the evidence." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. Furthermore,

the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible. Requiring the Commission to explain its credibility determination and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness or another or believes one piece of evidence is more credible than another.

*Id.* at 116-17, 530 S.E.2d at 553.

### B. Appellants' Arguments

Defendants bring forward three questions presented, organized into two arguments in their brief. In the heading of Argument I, defendants refer to all but one of the nineteen assignments of error. In the body of the argument, however, defendants do not mention any specific findings by number, but argue generally that the evidence does not support that the Commission "found that [Dodson's] injury

DODSON v. DUBOSE STEEL, INC.

[159 N.C. App. 1 (2003)]

and subsequent death arose out of his employment." In identically worded assignments of error 1 though 12, defendants challenge findings of fact 5 through 17 as not being supported by the "competent evidence of record." Similarly, assignments of error 13 through 18 challenge, in identical language, conclusions of law 1 through 4, 6 and 7 as not supported by the evidence and as "contrary to law." Assignment of error 19 challenges the award. We do not believe that this argument complies with the Rules of Appellate Procedure sufficiently to bring forward challenges to any of the specific findings of fact, with the possible exceptions of numbers 11, 12 and 14 and conclusions 1, 2 and 4, which read as follows:

11. The root cause of the confrontation between Dodson and Campbell originated when Dodson, while moving with the traffic, merged into Campbell's lane of traffic forcing Campbell out of his lane. Neither Dodson nor Campbell knew each other prior to this incident. There is no evidence that Dodson intended to force Campbell out of his lane of travel. At the time that the root cause incident occurred, Dodson was driving his truck in the ordinary course of his business for defendant-employer, Dubose Steel, Inc. which was the basic nature of his work as a truck driver. Defendants admit that at the time Dodson was struck by Campbell's vehicle he was an employee of Dubose Steel, Inc.

12. John Dodson's injuries and death resulted from an assault upon his person by a vehicle operated by Troy Campbell. Although there had been gestures and verbal exchanges between Campbell and Dodson (which neither of them could hear), based on the greater weight of the evidence, Dodson did not have a wilful intent to injure or kill Campbell when he exited his vehicle and walked toward the driver's side of Campbell's vehicle. Dodson appeared to have acted spontaneously.

* * * * *

14. Dodson's injury and death arose out of his employment. As a result of his injury and subsequent death, Dodson and now his estate have incurred ambulance and medical bills for treatment for the time that he lived prior to death, as well as burial expenses in excess of $2,000 . . .

* * * * *

**DODSON v. DUBOSE STEEL, INC.**

[159 N.C. App. 1 (2003)]

## CONCLUSIONS OF LAW

1. The injury to John Dodson occurring on September 27, 1999 and the resulting death occurring on October 4, 1999 constituted a compensable injury by accident arising out of and in the course of Dodson's employment with Dubose Steel, Inc. N.C. Gen Stat. §§ 97-2(6); 97-38.

2. John Dodson died as a result of an assault on his person by a vehicle driven by Troy Campbell. The assault originated from an argument based on the manner in which Dodson drove his truck in the course of his employment. *Hegler v. Cannon Mills*, 224 N.C. 669, 31 S.E.2d 918 (1944).

\* \* \* \* \*

4. Decedent's employment as a long distance truck driver caused him to spend the majority of his working hours traveling on highways and streets. Due to the nature of decedent's work, the risk of driver error causing tempers to flare among strangers on the busy highways was increased. Dodson and Campbell did not know each other so the inciting incident was not due to personal reasons. "Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work." A truck driver's risk of being struck by a vehicle is a risk greater than that of the general public. 1 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation, Desk Edition*, § 8 Scope (2000).

Thus, we will first discuss whether the evidence supports these findings and conclusions.

After a careful review according to the standard articulated by the Supreme Court, we conclude that evidence in the record supports the Commission's findings 11, 12, and 14. First, Troy Campbell, the motorist who hit Dodson, testified that his vehicle and Dodson's tractor-trailer were trying to merge into one lane of travel from the two in which they were traveling, when Dodson's truck forced Campbell off the road, while Campbell was "laying on the horn when he [Dodson] was coming over." At the next stoplight, according to Campbell and witnesses Scott Cash and Mark Davis, Dodson got out of his truck and started walking toward Campbell, banging his fist onto the hood of Campbell's vehicle, at which point Campbell drove forward, striking

DODSON v. DUBOSE STEEL, INC.

[159 N.C. App. 1 (2003)]

Dodson. Several days later Dodson died from his injuries. Campbell could not hear what, if anything, Dodson said while walking toward Campbell's vehicle, and Campbell testified that Dodson "really didn't have any kind of facial expression." We believe that this evidence, among much more, fully supports the above findings of fact to the effect that Dodson's injury and death were rooted in the driving incident.

The Full Commission chose to accept certain testimony as credible, which is within its authority, even though there may be evidence from which one could draw a contrary inference. *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. As we indicated earlier, the Full Commission is the "sole judge of the weight and credibility of the evidence" and need not explain its findings of fact to justify which evidence or witnesses it finds credible. *Id.* We conclude that ample evidence in the record supported the Commission's findings of fact.

Next, we examine whether the findings of fact support the Commission's conclusions of law. We believe that they do. Findings of fact numbers 11, 12, and 14, among others, support the Commission's legal conclusions and award regarding the root cause of Dodson's injury.

In their second "Question Presented," briefed as part B of Argument I, the defendants contend that the Commission erroneously analyzed this case according to the law pertaining to workplace assaults. Defendant's argue that the Commission's conclusions and award are contrary to applicable law, for three reasons. They contend that (1) the assault cases do not apply; (2) the employer received no "appreciable benefit" from Dodson's actions at the time of the injury according to the so-called Good Samaritan cases; and (3) that Dodson's work did not place him at increased risk of the type of incident in which he was injured.

We conclude, however, that the Commission properly analyzed this case according to the assault cases, because the incident was, we believe, more closely analogous to a workplace assault than to any of the factual scenarios underpinning defendants' proposed alternative theories. In reaching this conclusion we are guided, not only by the standard of review, but also by the clear and oft-articulated mandate of the Supreme Court that, in workers' compensation cases, the statute is to be broadly construed in favor of awarding benefits, in view of the remedial purpose of the Act. *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 293 S.E.2d 196 (1982). "Since the terms of the

Act should be liberally construed in favor of compensation, deficiencies in one factor are sometimes allowed to be made up by strength in the other." *Id.* 306 N.C. at 252, 293 S.E.2d at 199. Although we are mindful that the Worker's Compensation Act was not intended to provide a general insurance policy, our Courts have repeatedly held that "[t]he Workers' Compensation Act 'should be liberally construed to the end that benefits thereof should not be denied upon technical, narrow and strict interpretation." *Dildy v. MBW Invs., Inc.*, 152 N.C. App. 65, 73, 566 S.E.2d 759, 765 (2002), *citing Roberts v. Burlington Indus.*, 321 N.C. 350, 359, 364 S.E.2d 417, 423 (1988) (additional citations omitted).

In the assault cases the analysis of "arising out of" turns on whether the assault "originated in" something related to the job. In the opinion and award, the Commission cites *Hegler v. Cannon Mills Co.*, 224 N.C. 669, 31 S.E.2d 918 (1944), as a basis for its conclusion. There, the Supreme Court upheld an award of compensation where the injury and death resulted from an assault that followed a dispute between two cotton mill workers over one's attempt to supervise the other. The Court there pointed out:

> Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or unimportant. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where . . . as a result of it one injures the other, it may be inferred that the injury arose out of the employment.

*Id.*, 224 N.C. at 671, 31 S.E.2d at 920 (citations omitted). Plaintiff cites a number of cases in which this Court and the Supreme Court have held that an accidental injury is compensable where it results from an assault rooted in the performance of workplace duties. *See Wake County Hosp. System, Inc. v. Safety Nat'l Casualty Corp.*, 127 N.C. App. 33, 487 S.E.2d 789, *disc. review denied* 347 N.C. 410, 494 S.E.2d 600 (1997) (holding that death covered by workers' compensation where hospital social worker was abducted by hospital laundry worker, who took her to another location where he raped and murdered her, where record does not reflect whether decedent knew assailant.); *Pittman v. Twin City Laundry & Cleaners*, 61 N.C. App. 468, 300 S.E.2d 899 (1983) (upholding award of compensation where decedent was shot after an argument over whether another worker had been fired or not.)

We believe that the findings of the Commission support the conclusion that Dodson's injury and death originated in the traffic merging incident, which was clearly a dispute about Dodson's driving. Since Dodson's work primarily consisted of driving, and his workplace comprised public roads and highways, including the one upon which he was driving at the time of the merging incident, the findings also support the conclusion that the "assault upon Dodson [by Campbell's vehicle] was rooted in and grew out of his employment," and occurred in his workplace. This case is not similar to those in which a worker has been assaulted because of a personal relationship, unconnected to the employment. *See Hemric v. Mfg. Co.*, 54 N.C. App. 314, 283 S.E.2d 436 (1981), *disc. review denied*, 304 N.C. 726, 288 S.E.2d 806 (1982) (employee was shot during assault on co-worker by violent boyfriend); *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E.2d 350 (1972) (employee was assaulted at workplace by estranged husband); *Dildy*, 152 N.C. App. 65, 566 S.E.2d 759 (2002) (employee was assaulted at work by violent boyfriend.) Here the Commission has found as fact that the dispute had as its "root cause" the merging incident, which was related to driving and to "the basic nature of his work as a truck driver." Thus, according to the applicable case law, the Commission properly concluded that Dodson's injury and death resulted from an injury by accident arising out of and in the course of his employment.

Defendants argue that the Commission and the Court should analyze this case according to the cases in which an employee on a business trip interrupts his work to engage in personal conduct unrelated to the employer's business, such as the Good Samaritan cases, and that we should employ an "appreciable benefits" or "increased risk" test. *See Roman v. Southland Transp.*, 350 N.C. 549, 515 S.E.2d 214 (1999); *Roberts v. Burlington Indus.*, 321 N.C. 350, 364 S.E.2d 417 (1988). Because we have held that the evidence supports the Commission's findings, which in turn support its conclusions to the effect that Dodson's injury and death resulted from a dispute related to his business of driving, we do not believe that these cases apply. In so concluding, we again refer to the standard of review, according to which we are bound by the findings and conclusions of the Commission if there is any evidence to support them.

In *Roberts*, the employee was injured while on a business trip, during a stop to render aid to a third party. The Supreme Court affirmed the denial of benefits, holding that the employer received no "appreciable benefits" from the employee's stop. Here, however, the

**DODSON v. DUBOSE STEEL, INC.**

[159 N.C. App. 1 (2003)]

Commission found and concluded that at the time the "root cause" incident began, Dodson "was driving his truck in the course of his business for defendant-employer." Thus, we do not believe that either the "appreciable benefits" or "increased risk" analysis—applicable to cases in which the employee was *not* engaged in the employer's business, such as *Roberts*—applies here. In addition, although the Court in *Roman* also affirmed the denial of benefits where the decedent was shot while pursuing a robber, it did so in a three-to-three opinion, in which the Court noted that "the decision of the Court of Appeals is affirmed without precedential value." As such, we decline to treat *Roman* as authority.

In Argument II (Question presented 3), defendants contend that the plaintiff is barred from any compensation because Dodson's injury and death resulted from his wilful intention to injure Campbell. However, the Commission accepted as credible the evidence discussed above, and made findings of fact, including finding 12 quoted above, which support its conclusion number 3, that defendant failed to prove "by the greater weight of the evidence that [Dodson's] injury and death resulted from [Dodson's] wilful intention to injure or kill himself or another." Because these findings and conclusion are supported by the evidence even though there may have been evidence to the contrary, we reject this argument.

## CONCLUSION

In sum, we hold that the evidence supports the findings of fact, which in turn support the conclusions of law of the Commission. Since the Commission properly analyzed this case as an assault in the workplace, its conclusions are consistent with the applicable law. For the reasons set forth above, we affirm the opinion and award of the Industrial Commission.

Affirmed.

Judge McGEE concurs.

Judge STEELMAN dissents in part, concurs in part.

STEELMAN, Judge, dissenting in part and concurring in part.

I respectfully dissent from the majority's decision affirming the portion of the Commission's Opinion and Award concluding Dodson's injury and death arose out of and in the course of his

employment and awarding death benefits to plaintiff. Although I concur with the majority's conclusion that Dubose's argument under N.C. Gen. Stat. § 97-12(3) (2001) must fail, I do so on different grounds. The facts in this case are not in dispute; however, I recite additional facts to clarify and support my decision on this matter.

On 27 September 1999, John Dodson ("Dodson") was transporting a load of steel to Virginia for his employer, defendant Dubose Steel, Inc. ("Dubose"). While Dodson was driving in the right lane of a divided highway having two lanes of traffic in each direction, Troy Campbell ("Campbell") was driving in the same direction in the left lane. The two drivers encountered a disabled recreational vehicle partially blocking the right lane and causing the two lanes of traffic to merge left into a single lane. Dodson moved his truck into the left lane and forced Campbell into a left-turn lane as Campbell blew his horn several times. Dodson returned to the right lane after passing the disabled vehicle.

Campbell pulled up beside Dodson's truck, looked over at him, motioned back and said "you almost hit me back there." Campbell made gestures toward Dodson, who responded by shaking his finger at Campbell. Campbell then moved forward in the left lane to where the vehicles ahead of him were stopped at the traffic signal. While the two vehicles were stopped for the traffic signal, Dodson got out of his truck and walked around the front of Campbell's vehicle, striking the hood with his fist and signaling Campbell to get out of his vehicle. Campbell and other witnesses were under the impression that Dodson was angry as he approached Campbell's vehicle.

When Dodson reached the left front headlight of Campbell's vehicle, Campbell turned the wheels to the left and accelerated in an attempt to move into the left-turn lane. Campbell's vehicle struck Dodson, causing him to fall and to suffer significant head injuries which ultimately resulted in his death on 4 October 1999.

On 25 October 1999, defendant American Manufacturers Mutual Insurance ("American Mutual") denied the workers' compensation claim filed by plaintiff, finding that "there was no causal relationship of the employee's injuries to his employment." Plaintiff requested a hearing before the North Carolina Industrial Commission regarding the denial of the workers' compensation claim to determine whether Dodson was acting in the course and scope of employment at the time of his injury.

**DODSON v. DUBOSE STEEL, INC.**

[159 N.C. App. 1 (2003)]

On 30 November 2000, the Deputy Commissioner filed an Opinion and Award concluding that Dodson's death arose out of and in the course of his employment and ordering defendants to pay death benefits to plaintiff. Both Dubose and American Mutual appealed the Deputy Commissioner's Opinion and Award.

On 18 January 2002, the Full Commission ("Commission") affirmed the Deputy Commissioner's Opinion and Award. The Commission found facts as detailed above and made additional findings of fact and conclusions of law as set out in the majority opinion. Dubose appealed the Commission's Opinion and Award. American Mutual did not participate in this appeal.

The issue presented in Dubose's appeal to this Court is whether the death of an employee who was engaged in an act of "road rage" at the time of his injury resulting in his death suffered an injury compensable under N.C. Gen. Stat. Chapter 97. In the event that there are procedural inadequacies in Dubose's appeal, I would exercise this Court's authority under N.C.R. App. P. 2 (2003) to suspend the rules and address Dubose's arguments in their entirety.

I.

Dubose first contends the Commission erred in awarding death benefits to plaintiff because the event causing Dodson's injury and resulting death did not arise out of and in the course of his employment with Dubose.

Whether an employee's injury arises out of and in the course of his employment is a mixed question of law and fact. *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 293 S.E.2d 196 (1982). This Court's review of the Commission's Opinion and Award is limited to whether its factual findings are supported by any competent evidence and whether its conclusions are adequately supported by its findings. *Allen v. Roberts Elec. Contractors*, 143 N.C. App. 55, 546 S.E.2d 133 (2001). If the findings of fact compel a conclusion opposite of that reached by the Commission, it is the duty of this Court to reverse the Commission. *Warren v. City of Wilmington*, 43 N.C. App. 748, 259 S.E.2d 786 (1979).

## A. Background Law

The North Carolina Workers' Compensation Act, N.C. Gen. Stat. § 97-1, *et seq.* (hereinafter "the Act"), defines a compensable, accidental injury under the Act as one "arising out of and in the course of

**DODSON v. DUBOSE STEEL, INC.**

[159 N.C. App. 1 (2003)]

employment. . . ." N.C. Gen. Stat. § 97-2(6) (2001). The phrase "arising out of" relates to the origin of the accident and generally requires a causal connection between the nature of the employment and the injury. *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E.2d 350 (1972). "In the course of employment" refers to the time, place and circumstances giving rise to the injury. *Pittman v. Twin City Laundry & Cleaners*, 61 N.C. App. 468, 300 S.E.2d 899 (1983). Although these elements are interrelated, the claimant has the burden of establishing both to receive compensation. *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988); *Hoyle*, 306 N.C. at 251, 293 S.E.2d at 198.

### B. Arising Out of the Employment

There are two lines of North Carolina cases decided under N.C. Gen. Stat. § 97-2(6) which potentially are controlling in our determination as to whether Dodson's injuries arose out of his employment. The first line of cases, relied upon by the majority and the Commission, deals with injuries caused by assaults occurring in the workplace or assaults by co-workers. The second line of cases, relied upon by Dubose, addresses injuries to employees occurring when the employee interrupts his business for his employer to engage in personal conduct unrelated to his employer's business.

### 1. Assaults in the Workplace

The Commission expressly relied on one of the workplace cases, *Hegler v. Cannon Mills Co.*, 224 N.C. 669, 31 S.E.2d 918 (1944), in finding that Dodson's injuries and death were "rooted in" his employment. In *Hegler*, tensions between two co-workers, Hegler and Smith, developed over the course of a year and culminated in Hegler's complaint to his employer about the quality of Smith's work. *Id.* at 670, 31 S.E.2d at 919. Two days after the complaint, Smith assaulted and killed Hegler at their workplace. *Id.*

Our Supreme Court found that the tension between the two co-workers "had its origin in the employment." *Id.* at 671, 31 S.E.2d at 919. The *Hegler* Court also found that the assault was "directly connected with" and "was rooted in and grew out of the employment." *Id.* at 670-71, 31 S.E.2d at 919. *Hegler* affirmed the Commission's findings and conclusions that the death had occurred in the course of and arose out of the employment. *Id.*

This Court reached a similar conclusion in *Pittman v. Twin City Laundry*, 61 N.C. App. 468, 300 S.E.2d 899 (1983). In *Pittman*, a quar-

rel between two employees of the laundry service ended in one employee shooting and killing the other at the workplace. *Id.* at 470, 300 S.E.2d at 901. This Court held that the death "had its origin in a risk connected with [Pittman's] employment and that his death was in direct consequence of that risk." *Id.* at 474, 300 S.E.2d at 903. Thus, the *Pittman* Court, citing *Hegler*, found the shooting was causally connected to and arose out of the decedent's employment. *Id.*

*Pittman* expressly distinguished those cases where the claimant is injured at the workplace by a non-employee assailant who committed the assaults for reasons unrelated to the employer's business. In such cases, our courts have held "that an injury is not compensable when it is inflicted in an assault upon an employee by an outsider as a result of a personal relationship between them, and the attack was not created by and not reasonably related to the employment." *Hemric v. Manufacturing Co.*, 54 N.C. App. 314, 318, 283 S.E.2d 436, 438-39 (1981); *see also, Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E.2d 529 (1977) (holding that the employee's death did not arise out of her employment where there was no evidence that the assault was motivated by her employment or that her employment affected her risk of being assaulted); *Robbins, supra*, (holding that the assault and killing of an employee at her workplace did not arise out of her employment since the risk of assault by her estranged husband was personal and not incidental to her employment); *Dildy v. MBW Invs., Inc.*, 152 N.C. App. 65, 566 S.E.2d 759 (2002) (holding that claimant's injury at the store where she worked did not arise out of her employment because the risk that her boyfriend would carry out previous threats was based in a personal relationship independent of her employment).

In the present case, the incident giving rise to Dodson's injury and death was not an assault by a co-worker occurring at the workplace. Therefore, I would hold that this case is not controlled by the decisions concerning assaults in the workplace or assaults by co-workers.

## 2. Increased Risk Analysis

The facts and issues presented here are more analogous to the cases where an employee interrupts his work for his employer to engage in personal conduct unrelated to the employer's business, such as rendering assistance to a third person. In those cases, our courts primarily have relied on an increased risk analysis to determine whether injuries arose out of the claimant's employment.

The increased risk analysis requires a finding that the employee's injury was caused by an increased risk incidental to the employment. The key determination is whether the injury was "a natural and probable consequence of the nature of the employment." *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 532-33. A contributing proximate cause of the injury must be a risk unique to the nature of the employment and not a risk to which any member of the public would be equally exposed apart from the employment. *Id.* at 404, 233 S.E.2d at 533; *see also Roberts v. Burlington Indust.*, 321 N.C. 350, 364 S.E.2d 417 (1988). This risk also must be one "which might have been contemplated by a reasonable person . . . as incidental to the service when he entered the employment." *Bartlett v. Duke Univ.*, 284 N.C. 230, 233, 200 S.E.2d 193, 195 (1973).

In adopting the increased risk approach, our Supreme Court expressly rejected the "positional risk" doctrine, where an injury arises out of the employment if it " 'has its source in circumstances in which the employee's employment placed him.' " *Roberts*, 321 N.C. at 359, 364 S.E.2d at 423 (*quoting Bartlett*, 284 N.C. at 235, 200 S.E.2d at 196). Thus, even when employment provides "a convenient opportunity" for injury, it is not necessarily the contributing proximate cause. *Robbins*, 281 N.C. at 240, 188 S.E.2d at 354.

Our Supreme Court applied the increased risk analysis in *Roberts, supra*, where the decedent-employee worked as a furniture designer and often traveled to visit retail stores selling his employer's furniture. *Id.* at 351, 364 S.E.2d at 418. While he was returning home from a business trip, Roberts was struck and killed by a vehicle as he attempted to help an injured pedestrian who had no connection to his duties with his employer or his employer's business. *Id.* at 351, 364 S.E.2d at 419. The *Roberts* Court concluded that Roberts' employment did not increase the risk of being struck while assisting a pedestrian on the roadside and that "[t]he risk was common to the neighborhood, not peculiar to the work." *Id.* at 358, 364 S.E.2d at 423. The Court further held that although his employment may have placed him in the position to rescue the injured pedestrian, Roberts' own "decision to render aid created the danger," not the nature of his employment. *Id.* at 359, 364 S.E.2d at 423. Because it concluded Roberts' injury did not arise out of his employment, the Court ordered the reinstatement of the Commission's Opinion and Award denying compensation. *Id.* at 360, 364 S.E.2d at 424.

Here, the Commission found that the "root cause" of the *confrontation* occurred when Dodson merged into Campbell's lane while

he was driving in the course of his business for Dubose as part of the "basic nature of his work as a truck driver." By finding that Dodson's employment was the "root cause" of his confrontation, the Commission tacitly acknowledged that his employment was merely a remote cause, and not a direct or proximate cause, of his injury.

The Commission also concluded that Dodson's "employment as a long distance truck driver caused him to spend the majority of his working hours traveling on highways and streets." For this reason, the Commission concluded, "the risk of driver error causing tempers to flare among strangers on busy highways was increased." This conclusion is based upon a positional risk analysis, wherein Dodson's employment as a truck driver placed him on the highway more frequently than other drivers and, therefore, increased his risk of confrontations with other drivers. However, our Supreme Court expressly rejected the positional risk doctrine in favor of the increased risk approach.

The Commission further concluded that "[a] truck driver's risk of being struck by a vehicle is a risk greater than that of the general public." While a truck driver may experience an increased risk of being in a collision or accident involving his truck, his employment cannot reasonably be seen as increasing the risk of the driver himself being struck by a vehicle after exiting his truck to confront another driver on the roadside. The risk of confrontations while driving, commonly referred to as "road rage," is not unique to employment as a truck driver. It is something that can occur at anytime to any member of the general public in the normal course of operating a motor vehicle. The mere fact that Dodson drove on the highway more often as a result of his employment may have provided "a convenient opportunity" for exposure to "road rage," but as our Supreme Court held in *Roberts* and *Robbins, supra,* demonstrating positional risk does not establish a compensable injury.

Furthermore, the facts demonstrate that Dodson's injury was not the natural and probable consequence of his employment. The initial contact between Dodson and Campbell occurred when Dodson merged into Campbell's lane, forcing him into the turn lane. After passing the disabled vehicle, Campbell shouted to Dodson then continued forward to meet the traffic in front of him. At this point, the incident effectively had come to an end. However, Dodson personally chose to renew the confrontation by getting out of his truck to confront Campbell without any additional provocation or contact between the two men or any contact between their vehicles. Once

Dodson exited his truck to confront Campbell, his conduct was no longer related to his employment. As in *Roberts*, it was Dodson's independent and voluntary act of getting out of his truck to confront Campbell which created the risk that he could be struck by another vehicle. The risk of injury was not created by the nature of his employment.

The facts as found by the Commission compel the conclusions that the proximate cause of Dodson's injury was his decision to exit his vehicle to confront Campbell in an act of "road rage" and that the risk of such an act is not incidental or unique to nature of his employment as a truck driver but is a risk to which every member of the general public is equally exposed. Therefore, I would hold the Commission's findings do not support the conclusion that Dodson's injuries arose out of his employment with Dubose.

### C.  In the Course of the Employment

"In the course of employment" refers to the time, place and circumstances giving rise to the injury.

> With respect to time, the course of employment begins a reasonable time before work begins and continues for a reasonable time after work ends. The place of employment includes the premises of the employer. *Where the employee is engaged in activities that he is authorized to undertake and that are calculated to further, directly or indirectly, the employer's business, the circumstances are such as to be within the course of the employment.*

*Pittman*, 61 N.C. App. at 472, 300 S.E.2d at 901-02 (citations omitted) (emphasis added). The circumstances element is fulfilled when " 'the employee is doing what a man so employed may reasonably do within a time which he is employed and at a place where he may reasonably be during that time to do that thing.' " *Harless v. Fynn*, 1 N.C. App. 448, 456, 162 S.E.2d 47, 53 (1968) (citations omitted).

In this case, there was no finding that Dodson's actions occurred at the time or place of his employment. Further, the incident does not meet the circumstances element. Dodson was not authorized to exit his truck to confront other drivers, and he was not engaged in any activity in furtherance of Dubose's business when he got out to confront Campbell. Dodson was not doing what a truck driver reasonably would do at the time and place of his employment when the injury

**DODSON v. DUBOSE STEEL, INC.**

[159 N.C. App. 1 (2003)]

occurred. Therefore, I would hold the Commission's findings do not support its conclusion that Dodson's injuries occurred in the course of his employment.

## II.

In its second argument, Dubose contends the Commission erred pursuant to N.C. Gen. Stat. § 97-12(3) in awarding death benefits to Dodson where his death was proximately caused by his own willful intent to injure or kill himself or another. N.C. Gen. Stat. § 97-12(3) provides that "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by: . . . (3) [h]is willful intention to injure or kill himself or another." The employee must intentionally and purposefully intend to injure another. "Neither acts by the claimant, nor mere words spoken by the claimant and unaccompanied by any overt act, will be a sufficient bar to compensation unless the willful intent to injure is apparent from the context and nature of the physical or verbal assault." *Rorie v. Holly Farms Poultry Co.*, 306 N.C. 706, 710, 295 S.E.2d 458, 461 (1982). N.C. Gen. Stat. § 97-12(3) provides an affirmative defense for which Dubose has the burden of proof. *Id.* at 709, 295 S.E.2d at 460.

Based on statements by Campbell and other witnesses, the Commission found that Dodson struck Campbell's vehicle with his fists, pointed at Campbell and generally seemed angry. The Commission did not find that Dodson verbally threatened Campbell or that any physical assault on Campbell occurred. The context of this incident does not make apparent the fact that Dodson willfully intended to injure Campbell, only that he intended to confront him. I would hold that Dodson is not precluded from receiving compensation under N.C. Gen. Stat. § 97-12(3).

In summary, because the Commission's findings do not support its conclusions that Dodson's injuries arose out of and in the course of his employment, I would hold the Commission erred in concluding that Dodson suffered a compensable injury under N.C. Gen. Stat. § 97-2(6) and in awarding death benefits.