ANTHONY PULLEY, Employee-Plaintiff,
v.
CITY OF WILSON Employer, SELF-INSURED, Defendant
No. COA08-716
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Edelstein & Payne, by M. Travis Payne, for employee-appellee.
Rose Rand Attorneys, P.A., by Paul N. Blake, III, for defendant-appellant.
MARTIN, Chief Judge.
Defendant-employer City of Wilson ("defendant") appeals from an Opinion and Award of the North Carolina Industrial Commission ("Commission") concluding that plaintiff Anthony Pulley ("plaintiff") suffered a specific traumatic incident arising out of and in the course of his employment which aggravated a preexisting condition and that plaintiff is entitled to compensation for temporary total disability. We affirm.
On 4 May 2005, plaintiff filed a claim for workers' compensation against defendant, alleging that injuries to his neck and back were caused by incidents which occurred at work on 29 April 2004 and 29 November 2004. After hearing evidence and reviewing depositions submitted by the parties, a Deputy Commissioner filed an Opinion and Award concluding that plaintiff had not suffered a compensable injury by specific traumatic incident on 29 April 2004 or on 29 November 2004 as a result of his employment with defendant. From this decision, plaintiff appealed to the Full Commission, which issued its Opinion and Award on 11 March 2008 reversing in part the decision of the Deputy Commissioner. The Full Commission's Opinion and Award included the following findings of fact:
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one (51) years old. He did not graduate from high school, but did obtain a GED. Plaintiff worked as a firefighter with the Wilson Fire Department for approximately twenty-two (22) years. Other than seminars or courses on firefighting, plaintiff had no additional formal education.
2. On April 29, 2004, plaintiff alleges he was injured during a hazardous material training exercise when he picked up a mannequin weighing approximately one hundred seventy-five (175) pounds to put into a basket. Plaintiff testified that while lifting the mannequin, he felt a great deal of pain in his neck, going down into his left shoulder, arm and hand. Plaintiff was wearing his self-contained breathing apparatus (SCBA) at the time. Plaintiff finished the training exercise, cleaned up and went back to the station. Plaintiff told his captain, Chris Hines, that he needed to go home due to the amount of pain he was experiencing. However, because of a working house fire that occurred tying up the other engine companies, plaintiff decided to stay at work and complete the shift.
3. Prior to April 29, 2004, plaintiff had a history of neck and back problems. He was treated for ongoing neck problems in 2000 for which he was taking Vioxx. Only a few days after April 29, 2004, the City's wellness progress notes include an entry on May 5, 2004 indicating plaintiff was reevaluated for taking Vioxx in relation to pain in his neck.
4. On April 30, 2004, plaintiff presented to Dr. Kent Anderson and reported he was still having neck pain, that he had seen Dr. Vanden Bosch and had attended physical therapy, but was still in pain especially when he wore his air pack as a fireman.
5. Consequently, an MRI and other diagnostic studies were ordered, including a myelogram with a post-myelogram CT scan. The MRI revealed C5-6 and C6-7 degenerative changes with prominent disc bulges causing some degree of stenosis. The results of the myelogram showed plaintiff had bulging discs, both C5-6 and C6-7, with no evidence of spinal cord distortion or significant stenosis. However, plaintiff did have nerve root defects at both levels on the left side.
6. Dr. Anderson referred plaintiff to Dr. Ian Hardy, a board certified neurosurgeon. On July 1, 2004, plaintiff underwent left C5-6 and C6-7 laminotomies, partial facetectomies and foraminotomies. Dr. Hardy testified that plaintiff did well postoperatively. Plaintiff's arm pain improved, the weakness in his hand cleared up, and his reflexes remained intact.
7. Dr. Hardy opined that plaintiff's problems were of a degenerative nature versus a traumatic nature. He testified that there were hard discs; no soft discs present and he did not think an acute injury would have produced this sort of thing.
8. Plaintiff began light duty with defendant around the second week in September 2004.
9. When a firefighter has been out of work for an extended period, the Wilson Fire Department requires the firefighter to pass a physical ability test, also known as the "combat challenge." As the end of November 2004 approached, plaintiff had concerns as to whether he was physically able to resume full duties as a firefighter. Therefore, plaintiff requested permission from Battalion Commander Aycock, Deputy Chief Parker, and Deputy Chief Godwin to complete a walk[-]through of the combat challenge. All of the supervisors agreed plaintiff should do this and gave their permission.
10. On November 29, 2004, plaintiff went to the training tower to walk through the combat challenge. He put on his full turnout gear, including his air pack. The gear weighed approximately 60-70 pounds. At that point, plaintiff felt some discomfort in his neck, left shoulder, arm and hand. He walked around for a bit and decided to proceed with the test.
11. The first part of the combat challenge requires that a firefighter climb five stories of the fire tower with a hose pack or high rise pack weighing 50-55 pounds. Plaintiff picked up his hose pack, placed it on his right shoulder and started climbing the stairs of the tower. At that point, plaintiff began experiencing a significant level of pain in his neck, radiating down into his left shoulder, arm and hand. As a result of the pain, plaintiff had to stop his attempt to complete the walk[-]through.
12. Plaintiff testified that the pain he experienced following his attempt to walk through the combat challenge was essentially like the pain that he had in his neck and left shoulder, arm and hand prior to his surgery in July. He further testified that his pain remained at a more intense level following his attempt to walk through the combat challenge.
13. Plaintiff testified that a day or two following his attempt to walk through the combat challenge, he informed his supervisors that he had problems during his attempt at the combat challenge.
14. Commander Aycock confirmed that the day after plaintiff's walk[-]through attempt, plaintiff told him that he got about halfway up the tower with the hose pack and felt such pain in his neck and shoulder that he could not finish.
15. Chief Godwin similarly testified that plaintiff told him that as he tried the walk[-]through, his pain increased and therefore he stopped.
16. Plaintiff was referred to neurosurgeon, Dr. Robert Price, Jr. Plaintiff saw Dr. Price for the first time on December 20, 2004. At this visit, plaintiff reported to Dr. Price that he attempted the physical ability test he was required to take as a firefighter, but could not complete the test because he experienced severe difficulty with pain in his neck and shoulder. The impression was difficulty with chronic neck pain post surgery. Dr. Price doubted plaintiff had a recurrent disc condition. Dr. Price recommended that plaintiff have cervical spine films with flexion/extension views and a cervical MRI scan with or without contrast.
17. The cervical spine films done on December 22, 2004 showed degenerative disc changes at C5-6 and C6-7, no evidence of sublaxation on flexion or extension views. The MRI scan, also done on December 22, 2004, showed there was [sic] some persistent abnormal disc osteophytes present on the left at C5-6 and C6-7 associated with some mass effect on the left at C5-6; mild extradural deformity of the cervical cord at C5-6 antelaterally.
18. As a result [of] his treatment and evaluation of plaintiff, Dr. Price concluded that plaintiff was unable to work full[-]time as a firefighter. Therefore, plaintiff retired from the fire service. His last day of work with the Wilson Fire Department was March 31, 2005.
19. Dr. Price testified to a reasonable degree of medical certainty that the activity plaintiff engaged in by trying to walk through the physical ability test significantly aggravated or caused the neck and arm pain and problems for which he treated plaintiff.
20. Although plaintiff may have suffered an injury on April 29, 2004, the Full Commission finds that there is insufficient medical evidence of record from which to prove by the greater weight that plaintiff sustained a compensable medical injury as the result of the alleged incident on April 29, 2004.
21. Based on review of the evidence as a whole, the Full Commission further finds that plaintiff did suffer a specific traumatic incident on November 29, 2004. As a result of the specific traumatic incident, plaintiff suffered an aggravation of his preexisting neck condition.
22. As it is required that a firefighter who has been out of work for an extended period of time pass the physical ability test and plaintiff sought and obtained permission to compete a walk[-]through of the test from three supervisors, the Full Commission finds that the specific traumatic incident suffered by plaintiff on November 29, 2004 arose out of and in the course of his employment with defendant.
23. Before his employment with the Wilson Fire Department, plaintiff performed jobs in the construction industry. The Full Commission finds that plaintiff is capable of some work, but as a result of his ongoing physical problems arising from his neck injury, plaintiff is unable to perform any of the work which he previously performed.
24. Plaintiff has actively looked for employment since his retirement. He has regularly reviewed the Help Wanted ads from the local newspaper and made follow-up calls to several of the jobs listed in those ads. He has also reviewed the job listings available through the Employment Security Commission for the Wilson area. The greater weight of the evidence establishes that plaintiff has made reasonable efforts to find suitable employment, but has been unsuccessful in his efforts to locate suitable employment.
25. The medical treatment provided and prescribed for plaintiff for his neck condition by Dr. Anderson and Dr. Price on or after November 29, 2004 was reasonable and necessary treatment to effect a cure and relieve the symptoms he experienced.
Based on these and other findings of fact, the Full Commission made the following conclusions of law relevant to this appeal:
1. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and cause of the injury. Young v. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Plaintiff has failed to prove by the greater weight of the competent evidence that on April 29, 2004, he sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. On November 29, 2004, plaintiff suffered a specific traumatic incident arising out of and in the course of his employment with defendant, which aggravated his preexisting neck condition. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is capable of some work, but after a reasonable effort, has been unsuccessful in his efforts to obtain employment. Russell v. Lowe's Products Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As a result of his specific traumatic incident on November 29, 2004, plaintiff is entitled to temporary total disability compensation at a rate of $530.09 per week beginning April 1, 2005 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his November 29, 2004 compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
Based on its findings of fact and conclusions of law, the Full Commission entered an award in plaintiff's favor, which included the following provisions:
3. An attorney's fee in the amount of 25% is approved for the plaintiff's counsel, which shall be deducted from the amount owed plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay costs.
Defendant now appeals the Full Commission's Opinion and Award, assigning error to Findings of Fact 9, 21, and 22, as well as Conclusions of Law 2 and 4. Because defendant has not assigned error to the remaining Findings of Fact, these findings are "presumed to be supported by competent evidence" and are thus "conclusively established on appeal." See Johnson v. Herbie's Place, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, disc. review denied, 357 N.C. 460, 585 S.E.2d 760 (2003). Also on appeal, plaintiff has moved that we strike defendant's brief for rule violations and award plaintiff attorney's fees for defending this appeal.
We initially address plaintiff's motion for costs and attorney's fees incurred in defending this appeal. In support of this motion, plaintiff argues that he is entitled to reasonable attorney's fees under N.C.G.S. § 97-88 and Rule 34 of the North Carolina Rules of Appellate Procedure. Under N.C.G.S. § 97-88, the Commission or a reviewing court may award costs, including attorney's fees, to an injured employee "' if (1) the insurer has appealed a decision to the full Commission or to any court, and (2) on appeal, the Commission or court has ordered the insurer to make, or continue making, payments of benefits to the employee.'" Brown v. Public Works Comm'n, 122 N.C. App. 473, 477, 470 S.E.2d 352, 354 (1996) (quoting Estes v. N.C. State Univ., 117 N.C. App. 126, 128, 449 S.E.2d 762, 764 (1994)); see also N.C. Gen. Stat. § 97-88 (2007).
Here, defendant, whom the parties have stipulated is a self-insured employer, appealed the Commission's Opinion and Award, which awarded plaintiff temporary disability compensation and medical expenses. However, we note that the Commission's Opinion and Award ordered defendant to pay plaintiff "[a]n attorney's fee in the amount of 25% . . . which shall be deducted from the amount owed plaintiff and paid directly to plaintiff's counsel," as well as costs. We also note that, on appeal, defendant has presented good-faith, though ultimately unsuccessful arguments. As such, in our discretion, plaintiff's motion for attorney's fees is denied.
Next, we address plaintiff's motion to strike defendant's brief. In support of this motion, plaintiff argues that, because defendant contends that there was insufficient evidence to support the findings and conclusions of the Commission, Rule 28 of the North Carolina Rules of Appellate Procedure required defendant to attach relevant portions of the transcript as an appendix. We note however, that, pursuant to Rule 28, "the appellant is not required to reproduce an appendix to its brief with respect to an assignment of error . . . to show the absence or insufficiency of evidence unless there are discrete portions of the transcript where the subject matter of the alleged insufficiency of the evidence is located." N.C.R. App. P. 28(d)(2)b (2008). Our review of the record reveals that there are no discrete portions of the transcript which defendant was obligated to attach to its brief. Accordingly, we deny plaintiff's motion to strike defendant's brief and turn now to defendant's assignments of error.
On appeal, we review decisions from the Industrial Commission to determine whether any competent evidence supports the findings of fact and whether the findings of fact support the conclusions of law. McRae v. Toastmaster, Inc., 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004). "The findings of fact by the Industrial Commission are conclusive if supported by any competent evidence." See Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), reh'g denied, 350 N.C. 108, 532 S.E.2d 522 (1999) (citing Gallimore v. Marilyn's Shoes, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). This is true "even though there be evidence that would support findings to the contrary." Jones v. Myrtle Desk Co., 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." Lanning v. Fieldcrest-Cannon, Inc., 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000). However, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight." Anderson v. Lincoln Constr. Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). Instead, our duty goes no further than to determine whether the record contains any evidence tending to support the Commission's findings. See id. In turn, we review the Commission's legal conclusions to determine whether they are justified by those findings. See Aaron v. New Fortis Homes, Inc., 127 N.C. App. 711, 714, 493 S.E.2d 305, 306 (1997).
Defendant first assigns error to the Commission's Findings of Fact 9, 22, and Conclusion of Law 2, arguing that plaintiff's injury occurred during an activity which, because it was not required or specifically authorized by his supervisors, fell outside the scope of plaintiff's employment. We disagree.
The requirement that an injury occur in the course of employment refers to the time, place, and circumstances giving rise to the injury. Dodson v. Dubose Steel, Inc., 159 N.C. App. 1, 12, 582 S.E.2d 389, 396 (2003) (Steelman, J. dissenting), rev'd per curiam, 358 N.C. 129, 591 S.E.2d 548 (2004) (for reasons stated in the dissent). "Where the employee is engaged in activities that he is authorized to undertake and that are calculated to further, directly or indirectly, the employer's business, the circumstances are such as to be within the course of the employment." Id. (quoting Pittman v. Twin City Laundry & Cleaners, 61 N.C. App. 468, 472, 300 S.E.2d 899, 901-02 (1983). The circumstances element is fulfilled when "the employee is doing what a man so employed may reasonably do within a time which he is employed and at a place where he may reasonably be during that time to do that thing." Harless v. Flynn, 1 N.C. App. 448, 456, 162 S.E.2d 47, 53 (1968).
Our review of the record indicates that plaintiff's "light duty" restrictions, imposed by Dr. Hardy, expired on 27 November 2004, and that, under Dr. Hardy's direction, plaintiff was to resume full duty work as of that date. All of plaintiff's supervisors testified that, pursuant to the policy of the Wilson Fire Department, plaintiff was required to successfully complete the "combat course," a physical ability test, in order to return to full duty status. On 29 November 2004, during work hours, plaintiff approached his supervisors and asked permission to attempt a "walk-through" of the combat course. None of plaintiff's supervisors indicated disapproval, protested, or forbade plaintiff to attempt the walk-through. Deputy Chief Parker testified that, although he did not agree to a "walk-through," he did give plaintiff permission to "go down there and put on his air pack and stuff and walk around and see how it felt." Similarly, Deputy Chief Goodwin testified that, although he did not require plaintiff to attempt the walk-through, he did tell plaintiff "by all means, go ahead." Additionally, Battalion Commander Aycock testified that he had consented when plaintiff "stopped by my office that morning and said that he was going to go do a walk-through of the combat test." Battalion Commander Aycock added, "We're always, you know, encouraging people, you know, to be able to come back to work off of light duty if  if at all possible." Accordingly, viewed in the light most favorable to plaintiff, we hold there was competent evidence to support the Commission's Findings of Fact 9 and 20 that plaintiff was required to complete the combat challenge before returning to full duty status and that plaintiff's supervisor gave plaintiff permission to attempt a walk-through of the combat course. Because plaintiff was required to complete the combat course before returning to full duty status, the Commission was justified in concluding as a matter of law that plaintiff's injury arose out of and in the course of his employment with defendant.
Defendant next assigns error to the Commission's Finding of Fact 21 and Conclusion of Law 4, arguing there was no competent evidence that plaintiff's injury occurred as a result of a "specific traumatic incident of the work assigned" and, as such, plaintiff is not entitled to benefits under the Workers' Compensation Act. As part of this argument, defendant contends that the pain suffered by plaintiff after the 29 November 2004 incident constituted a symptom of plaintiff's preexisting degenerative condition, rather than a "specific traumatic incident." We disagree.
In order for an injury to be compensable under North Carolina's Workers' Compensation Act, an employee must prove that he suffered an injury by accident, the injury arose out of his employment, and the injury was sustained in the course of employment. Hollar v. Montclair Furn. Co., 48 N.C. App. 489, 269 S.E.2d 667 (1980); N.C. Gen. Stat. § 97-1 (2007). N.C.G.S. § 97-2(6) defines "injury by accident," providing that it:
shall not include a disease in any form, except where it results naturally and unavoidably from the accident. With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.
N.C. Gen. Stat. § 97-2(6) (2007). Thus, a back injury may be compensated if it arose from a specific traumatic incident. Fish v. Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995); Richards v. Town of Valdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989). To establish a "specific traumatic incident," the evidence must only show that the injury resulted during a judicially cognizable period of time. Fish, 116 N.C. App. at 703, 449 S.E.2d at 233. The aggravation of a preexisting spinal condition as a result of a specific traumatic incident at work may constitute a compensable injury. Ruffin v. Compass Grp. USA, 150 N.C. App. 480, 484, 563 S.E.2d 633, 637 (2002); Smith v. Champion Int'l, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999) ("Clearly, aggravation of a pre-existing condition which results in loss of wage earning capacity is compensable under the workers' compensation laws in our state."). In order for a plaintiff's claim to be compensable, there must also be proof of a causal relationship between the injury and the employment. Peagler v. Tyson Foods, Inc., 138 N.C. App. 593, 597, 532 S.E.2d 207, 210 (2000). In evaluating the causation issue, this Court must examine the record to determine whether there is competent evidence to support the Commission's findings. Id. "Where the link between a plaintiff's condition and an accident at work involves a complex medical question, . . . a finding of causation must be premised upon the testimony of a medical expert." Singletary v. N.C. Baptist Hosp., 174 N.C. App. 147, 154, 619 S.E.2d 888, 893 (2005). The medical expert must testify to the cause of plaintiff's condition to some degree of medical certainty. See Adams v. Metals USA, 168 N.C. App. 469, 608 S.E.2d 357, aff'd per curiam, 360 N.C. 54, 619 S.E.2d 495 (2005).
Initially, we note that defendant has failed to assign error to Finding of Fact 19, which provides:
Dr. Price testified to a reasonable degree of medical certainty that the activity plaintiff engaged in by trying to walk through the physical ability test significantly aggravated or caused the neck and arm pain and problems of which he treated plaintiff.
This Finding, along with Findings of Fact 10-12, which describe the specific traumatic incident and the pain plaintiff felt immediately thereafter, are binding upon us for purposes of this appeal. See Johnson, 157 N.C. App. at 180, 579 S.E.2d at 118. Furthermore, our review of the record reveals that both Dr. Price's medical notes and testimony before the Commission indicated that "[plaintiff] was markedly improved with regard to his arm pain and his arm pain was almost completely cleared" since the time of his neck surgery but prior to the 29 November 2004 incident. Viewed in the light most favorable to the plaintiff, the above findings, together with the record evidence of plaintiff's increased pain and neck problems after his attempt to walk through the combat course on 29 November 2004, support the Commission's finding that plaintiff's preexisting neck condition was aggravated by a specific traumatic incident.
In regards to the compensability of plaintiff's claim, our Supreme Court has held that, when a claimant suffers from a pre-existing, nondisabling, non-job-related condition, [which] is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent. Morrison v. Burlington Indus., 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981). The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. Russell v. Lowes Prod. Distrib'n, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citing Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982)). The employee may meet this burden by the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment. Peoples v. Cone Mills Corp., 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986). "This Court has previously held that an employee's own testimony as to pain and ability to work is competent evidence as to the employee's abilityto work." Boles v. U.S. Air, Inc., 148 N.C. App. 493, 499, 560 S.E.2d 809, 813 (2002); see also Matthews v. Petroleum Tank Serv., Inc., 108 N.C. App. 259, 423 S.E.2d 532 (1992); Niple v. Seawell Realty & Indus. Co., 88 N.C. App. 136, 362 S.E.2d 572 (1987), disc. review denied, 321 N.C. 744, 365 S.E.2d 903 (1988).
Here, plaintiff has presented evidence which tends to show that, as a result of the specific traumatic incident on 29 November 2004, plaintiff still has problems with his neck and left arm when doing physical work. Plaintiff also presented evidence that, because his education and work experience are limited, he is only qualified for construction work or physical labor, which his condition prevents. We note that defendant has failed to assign error to the Commission's Findings of Fact 23 and 24, or Conclusion of Law 3, which establish that plaintiff is unable to perform any of the jobs he worked prior to his employment with defendant and that plaintiff has made reasonable, though ultimately unsuccessful efforts to find suitable employment. As such, the Commission's conclusion that plaintiff is entitled to receive temporary total disability compensation under N.C.G.S. § 97-29 is justified and defendant's assignment of error is overruled.
Affirmed.
Judges BRYANT and BEASLEY concur.
Report per Rule 30(e).